# IN THE CIRCUIT COURT

# FOR BALTIMORE CITY

| | | |
|---|---|---|
| TERRELL CORBITT, an individual, | ) | Case No. |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **COMPLAINT** |
| | ) | |
| BALTIMORE CITY POLICE DEPARTMENT; | ) | |
| EPIFANO TORRES, JR.; DUREL HAIRSTON; | ) | |
| JEFFREY RIVERA; JONATHAN JONES; JOHN | ) | |
| WITTER; STEVEN MCDONALD; EUGENEO | ) | |
| COKER; JASMIN ROWLETT; MICHAEL | ) | |
| BALDWIN; STEVEN FOSTER; NICHOLAS | ) | |
| BILLINGS; LINDSON AGELLA; TIMOTHY | ) | |
| BARDZIK; JAMES WAGSTER; REBECCA | ) | |
| JACKSON; RACHEL HARE; ALAN DAMIANI; | ) | |
| JENNIFER | ) | |
| INGBRETSON; COMMISSIONER KEVIN | | **JURY TRIAL DEMANDED** |
| DAVIS; CHIEF T.J. SMITH; POLICYMAKER 3; | | |
| JOSEPH ALLEN; JOANN JACKSON; | | |
| MAUSEAN CARTER; DOE DEFENDANTS 1-20. | | |
| Defendants. | | |

# COMPLAINT

Plaintiff, TERREL CORBITT, an individual and resident of the state of Maryland, by and through his attorneys, hereby states his Complaint for negligence and violation of his state Constitutional rights against the Defendants, BALTIMORE CITY POLICE DEPARTMENT ("BPD"); EPIFANO TORRES, JR.; DUREL HAIRSTON; JEFFREY RIVERA; JONATHAN JONES; JOHN WITTER; STEVEN MCDONALD; EUGENEO COKER; JASMIN ROWLETT; MICHAEL BALDIWIN; STEVEN FOSTER; NICHOLAS BILLINGS; LINDSON AGELLA; TIMOTHY BARDZIK;

JAMES WAGSTER; REBECCA JACKSON; RACHEL HARE; ALAN DAMIANI; JENNIFER INGBRETSON; COMMISSIONER KEVIN DAVIS ("DAVIS"); CHIEF T.J. SMITH ("SMITH"); JOSEPH ALLEN ("ALLEN"); JOANN JACKSON ("J. JACKSON") MAUSEAN CARTER ("CARTER"); and certain unknown Doe Defendants ("Does") as follows:

**INTRODUCTION**

1. On or about December 15, 2017, Plaintiff Terrell Corbitt and his friend Joseph Allen were driving to a Home Depot.

2. A short distance away, Baltimore City Police Officers were pursuing a criminal suspect after the suspect had attempted to evade arrest. The suspect soon began discharging his weapon from a moving vehicle.

3. Despite radio alerts that shots had been fired and the fact that all officers involved recognized the significantly increased risk to bystanders posed by the chase, over fifteen police vehicles joined in, and continued the pursuit.

4. During the pursuit, at least one of the officers also discharged their firearm from their moving police vehicle. The officers' attempts to disable the suspect or his vehicle by gunshot while driving—combined with the firing from the suspect—created a crossfire for bystanders in the entire area of the car chase. Plaintiff was one of those bystanders.

5. As a result of the crossfire, Plaintiff was struck in the rear left of his head by a bullet. On information and belief and based upon the fact that Plaintiff was struck from the rear, the bullet that struck Plaintiff originated from one of the officers who fired at the suspect.

6. As a result of Plaintiff's presence in the highly dangerous crossfire, Plaintiff has been paralyzed for life on one side of his body.

## JURISDICTION AND VENUE

7. This is an action for monetary relief for violation of Corbitt's rights under Article 26 of the Maryland Declaration of Rights and Maryland statutory and common law.

8. This is an action for monetary relief for violation of the Fourth Amendment of the United States Constitution pursuant to 42 U.S.C. § 1983.

9. This Court has jurisdiction of Plaintiff's federal claims pursuant to 28 U.S.C. § 1331, and supplemental jurisdiction of Plaintiff's state law claims under 28 U.S.C. § 1367.

10. This Court is the appropriate venue pursuant to 28 USC § 1391(b) because the events and omissions giving rise to the claims occurred in Maryland. Plaintiff resided in this judicial district at all times relevant to this Complaint, the majority of Defendants reside in this judicial district, and the events and omissions giving rise to Plaintiffs' claims occurred within this judicial district.

## PARTIES

11. Plaintiff Terrell Corbitt is an individual and resident of the state of Maryland, and was a resident of the state of Maryland at all times relevant to this Complaint.

12. The Baltimore City Police Department ("BPD") is an agency of the state of Maryland. The BPD is responsible for conducting criminal investigations and apprehensions in a reasonable manner to protect the life and well-being of Maryland residents. Through its policymaking officers, including Davis and Smith, BPD creates, implements, and ratifies policies, practices, habits, customs and procedures, and for

training and supervision of officers regarding apprehension of suspected criminals, particularly of those during high-speed car chases. As an agency of the state of Maryland, BPD acted under color of state law at all times relevant to this Complaint. Plaintiff has provided notice of his claim against the state of Maryland to the Treasurer.

13. EPIFANO TORRES, JR. ("Torres") is an employee of the BPD and, on information and belief, a resident of the state of Maryland. At all times relevant to this Complaint, Torres acted pursuant to established policy and training of the BPD regarding car chases. Torres is sued in his official capacity.

14. DUREL HAIRSTON ("Hairston") is an employee of the BPD and, on information and belief, a resident of the state of Maryland. At all times relevant to this Complaint, Hairston acted pursuant to established policy and training of the BPD regarding car chases. Hairston is sued in his official capacity.

15. JEFFREY RIVERA ("Rivera") is an employee of the BPD and, on information and belief, a resident of the state of Maryland. At all times relevant to this Complaint, Rivera acted pursuant to established policy and training of the BPD regarding car chases. Rivera is sued in his official capacity.

16. JONATHAN JONES ("Jones") is an employee of the BPD and, on information and belief, a resident of the state of Maryland. At all times relevant to this Complaint, Jones acted pursuant to established policy and training of the BPD regarding car chases. Jones is sued in his official capacity.

17. JOHN WITTER ("Witter") is an employee of the BPD and, on information and belief, a resident of the state of Maryland. At all times relevant to this Complaint, Witter

acted pursuant to established policy and training of the BPD regarding car chases. Witter is sued in his official capacity.

18. STEVEN MCDONALD ("McDonald") is an employee of the BPD and, on information and belief, a resident of the state of Maryland. At all times relevant to this Complaint, McDonald acted pursuant to established policy and training of the BPD regarding car chases. McDonald is sued in his official capacity.

19. EUGENEO COKER ("Coker") is an employee of the BPD and, on information and belief, a resident of the state of Maryland. At all times relevant to this Complaint, Coker acted pursuant to established policy and training of the BPD regarding car chases. Coker is sued in his official capacity.

20. JASMIN ROWLETT ("Rowlett") is an employee of the BPD and, on information and belief, a resident of the state of Maryland. At all times relevant to this Complaint, Rowlett acted pursuant to established policy and training of the BPD regarding car chases. Rowlett is sued in her official capacity.

21. MICHAEL BALDWIN ("Baldwin") is an employee of the BPD and, on information and belief, a resident of the state of Maryland. At all times relevant to this Complaint, Baldwin acted pursuant to established policy and training of the BPD regarding car chases. Baldwin is sued in his official capacity.

22. STEVEN FOSTER ("Foster") is an employee of the BPD and, on information and belief, a resident of the state of Maryland. At all times relevant to this Complaint, Foster acted pursuant to established policy and training of the BPD regarding car chases. Foster is sued in his official capacity.

23. NICHOLAS BILLINGS ("Billings") is an employee of the BPD and, on information and belief, a resident of the state of Maryland. At all times relevant to this Complaint, Billings acted pursuant to established policy and training of the BPD regarding car chases. Billings is sued in his official capacity.

24. LINDSON AGELLA ("Agella") is an employee of the BPD and, on information and belief, a resident of the state of Maryland. At all times relevant to this Complaint, Agella acted pursuant to established policy and training of the BPD regarding car chases. Agella is sued in his official capacity.

25. TIMOTHY BARDZIK ("Bardzik") is an employee of the BPD and, on information and belief, a resident of the state of Maryland. At all times relevant to this Complaint, Bardzik acted pursuant to established policy and training of the BPD regarding car chases. Bardzik is sued in his official capacity.

26. JAMES WAGSTER ("Wagster") is an employee of the BPD and, on information and belief, a resident of the state of Maryland. At all times relevant to this Complaint, Wagster acted pursuant to established policy and training of the BPD regarding car chases. Wagster is sued in his official capacity.

27. REBECCA JACKSON is an employee of the BPD and, on information and belief, a resident of the state of Maryland. At all times relevant to this Complaint, Jackson acted pursuant to established policy and training of the BPD regarding car chases. Jackson is sued in her official capacity.

28. RACHEL HARE is an employee of the BPD and, on information and belief, a resident of the state of Maryland. At all times relevant to this Complaint, Hare acted

pursuant to established policy and training of the BPD regarding car chases. Hare is sued in her official capacity.

29. ALAN DAMIANI ("Damiani") is an employee of the BPD and, on information and belief, a resident of the state of Maryland. At all times relevant to this Complaint, Damiani acted pursuant to established policy and training of the BPD regarding car chases. Damiai is sued in his official capacity.

30. JENNIFER INGBRETSON ("Ingbretson") is an employee of the BPD and, on information and belief, a resident of the state of Maryland. At all times relevant to this Complaint, Ingbretson acted pursuant to established policy and training of the BPD regarding car chases. Ingbretson is sued in her official capacity.

31. Defendants referenced in paragraphs 15 through 32 shall be referred to as the "Officer Defendants". On information and belief, one or more of the Officer Defendants shall later be sued in their individual capacity as a result of their grossly negligent conduct in discharging their weapons from a moving vehicle.

32. COMMISSIONER KEVIN DAVIS ("Davis") was at all times relevant to this Complaint an employee and officer of the BPD and, on information and belief, a resident of the state of Maryland. Davis was directly or jointly responsible for creating, implementing, and ratifying policy regarding criminal apprehension through car chases for the BPD at all times relevant to this Complaint.

33. CHIEF T.J. SMITH ("Smith") is an employee and officer of the BPD and, on information and belief, a resident of the state of Maryland. Smith was directly or jointly responsible for creating, implementing, and ratifying policy regarding criminal apprehension through car chases for the BPD at all times relevant to this Complaint.

34. JOSEPH ALLEN ("Allen") is a resident of the state of Maryland. Plaintiff was sitting in Allen's passenger seat at the time of the high-speed chase at issue. On information and belief, Allen is the holder of an insurance policy which protects or indemnifies all passengers for injury suffered while being transported in Allen's vehicle.

35. JOANN JACKSON ("J. Jackson") is a resident of the state of Maryland. Plaintiff was sitting in the passenger seat in J. Jackson's car. On information and belief, J. Jackson is the holder of an insurance policy which protects or indemnifies all passengers for injury suffered while being transported in her vehicle.

36. MAUSEAN CARTER ("Carter") is a resident of the state of Maryland and was the target of the police chase described herein at all times relevant to this Complaint.

37. On information and belief, there are additional Officer and/or Policy-making Defendants who are responsible for Plaintiff's injuries suffered as a result of the inherently dangerous circumstance presented by the car chase at issue, or insurers that are responsible for indemnifying Plaintiff for his injuries, and such parties shall be referred to as the "Doe Defendants" herein. Plaintiff will amend his Complaint to state these individuals' and entities' true identities once such information becomes available.

## FACTS

38. On December 15, 2017, one of the Officer Defendants detained Mr. Mausean Carter at a traffic stop on Reiserstown Road because the window tinting on his automobile exceeded legal limits.

39. Upon returning to his police vehicle, this Officer Defendant discussed his suspicion with another BPD officer and with BPD dispatch that Carter's vehicle had been involved in a recent shooting.

40. While BPD dispatch was determining whether Carter's vehicle was in fact the vehicle in question, the BPD dispatch operator authorized this Officer Defendant to detain Carter and instruct him to exit the vehicle so that the officer could perform a search.

41. The detaining Officer Defendant instructed Carter to exit the vehicle. Carter instead fled the scene at a high rate of speed. The detaining Officer Defendant immediately returned to his vehicle to pursue Carter northbound on Reiserstown Road.

42. Carter began firing shots at the detaining Officer Defendant vehicle within a matter of seconds of that Defendant's pursuit. The detaining Officer Defendant relayed information regarding the pursuit to BPD dispatch officers.

43. BPD dispatch officers promptly informed all officers that Carter had a rifle in the car.

44. BPD helicopter surveillance tracked Carter's trajectory during the pursuit, and relayed all information regarding the pursuit to all involved officers as it happened in real time.

45. While pursuing Carter eastbound on Gwen's Falls Road, one of the Officer Defendants announced that Carter continued to fire at pursuing police vehicles.

46. The helicopter informed all Officer Defendants over dispatch to exercise care because of the shots fired.

47. Throughout this time officers continued to warn that shots had been fired.

48. Helicopter instructed officers that they could pull back if they didn't feel safe, and that the helicopter would continue to follow Carter. Helicopter instructed police vehicles

to keep their distance. BPD knew that proximity to the vehicle was inherently unsafe and dangerous.

49. During the chase, at least one of the Officr Defendants returned fire at Carter's vehicle.

50. Carter's vehicle was eventually disabled by police gunfire, and Carter was taken into custody at or around the 1800 block of Gwen's Falls Road. Carter was arrested and taken into BPD custody on the 1800 block of Gwens Falls after approximately six minutes of pursuit.

51. During the exchange of fire, Corbitt was struck by stray gunshots in the head while sitting as a passenger in the back of his cousin's vehicle.

52. After being rushed to the hospital, Corbitt survived, but is paralyzed on the left side of his body. Corbitt's injuries may remain with him for the rest of his life.

**FIRST CAUSE OF ACTION**

<u>**Negligence and Gross Negligence – Against the BPD Defendants**</u>

53.     Plaintiff hereby incorporates and re-alleges paragraphs 1 to 52 of this Complaint as if set forth in full herein.

54.     At all times relevant to this Complaint, the Officer Defendants had a duty to apprehend criminals in a reasonable manner and according to the professional standards applicable to law enforcement officers. The performance of this duty is intended to preserve the peace and the safety of all citizens of Baltimore.

55.     The Officer Defendants breached their duty as police officers in three distinct ways; first, they initiated a high-speed chase to apprehend Carter with knowledge

that he was a suspect for a series of shootings. The risk that Carter would attempt to use firearms at his disposal during the chase was known or should have been known to the Officer Defendants, and presented an unreasonable risk to automobile drivers and their passengers travelling in the surrounding area.

56. The chase caused Carter to attempt to evade police apprehension by making use of the firearms at his disposal. Carter fired at the Officer Defendants during the chase multiple times, intending to use gun-fire to escape apprehension.

57. The Officer Defendants breached their duty as police officers, secondly, by continuing to chase Carter after he began opening fire on public streets during the chase. The firefight created by the chase presented an unreasonable risk to automobile drivers and their passengers travelling in the surrounding area.

58. Despite Carter's continued shooting, the Officer Defendants maintained the chase with full knowledge that Carter was shooting at them in order to increase the danger to bystanders created by the chase.

59. The Officer Defendants continued the chase despite knowledge of this significantly increased risk to bystanders, including Plaintiff.

60. The Officer Defendants continued the chase when a reasonable officer would have terminated the chase given the driver's history, and given that the driver was actively shooting at police vehicles.

61. At least one of the Officer Defendants willfully and wantonly breached his or her duty as a police officer when that individual discharged their firearm from a moving vehicle, and such conduct was undertaken with reckless disregard for the welfare and safety of bystanders in the immediate area of the chase.

62. The Officer Defendants' shots fired from their vehicles while chasing Carter posed an unreasonable risk to bystanders, commuters and their passengers travelling in the surrounding area, and presented no legitimate increase in the chance that Carter would be apprehended.

63. As a result of the continued firefight, Plaintiff was struck in the head while riding in the rear passenger seat of his cousin's vehicle. On information and belief, Plaintiff's injury was caused by the shot fired by one of the Officer Defendants.

64. The Officer Defendants' breaches are the direct cause of Plaintiff's injuries, who would not have been injured but for the Officer Defendants' initiation of the chase.

65. The Officer Defendants' breaches are the direct cause of Plaintiff's injuries, who would not have been injured but for the Officer Defendants' continuation of the chase.

## SECOND CAUSE OF ACTION

**Bodily Injury by Negligent Operation of Automobile - Against Ins. Co. Defendants**

66. Plaintiff incorporates paragraphs 1 to 65 as though stated herein in full;

67. Plaintiff suffered injury as a result of the Officer Defendants' negligent operation of their vehicles, and which occurred while Plaintiff was a passenger in Allen's automobile.

68. Plaintiff's injuries were caused by the Officer Defendants' negligent operation of an automobile. Specifically, the Officer Defendants exhibited negligence by initiating a high speed car chase with Carter, by continuing the chase after Carter opened fire on them, and by returning fire upon Carter from their moving vehicles.

69. As a passenger in Allen's automobile, Plaintiff is entitled for indemnification of his injuries and costs from the automobile insurance policy issued to Allen.

70. As a passenger in the car owned by J. Jackson is the holder of an insurance policy which protects or indemnifies all passengers for injury suffered while being transported in J. Jackson's vehicle.

71. As a passenger in J. Jackson's automobile, Plaintiff is entitled for indemnification of his injuries and costs from the automobile insurance policy issued to J. Jackson.

**THIRD CAUSE OF ACTION**

**Negligent Supervision – Against Policymaker Defendants**

72. Plaintiff incorporates Plaintiff hereby incorporates and re-alleges paragraphs 1 to 65 of this Complaint as if set forth in full herein.

73. At all times relevant to this Complaint, the Officer Defendants were operating a vehicle owned by the state of Maryland, the Baltimore Police Department, or another governmental entity within the meaning of Md. Code of Courts and Judicial Proceedings 5-639.

74. The Officer Defendants were agents and/or employees of the BPD, as managed by Davis and Smith, and were acting in furtherance of the business and duty of their respective governmental entities.

75. Defendants Davis, Smith, and the BPD (the "Policymaking Defendants") have a duty to adequately and appropriately train the officers employed by the BPD, and

to adequately and appropriately discipline them when they fail to adhere to their duties as police officers.

76. On information and belief, as a result of the Policymaking Defendants' failure to train the Officer Defendants, the Officer Defendants continued to chase Carter's vehicle even after he had begun to fire weapons on the open streets of the city, and also fired back at him, creating a cross-fire endangering every hundreds of bystanders and commuters in the area.

77. The Officer Defendants' decision to discharge their weapons from a moving vehicle was a result of the Policymaker Defendants' failure to train them to refrain from doing so during car chases of criminal suspects.

78. On information and belief, the Policymaking Defendants' failure to train the Officer Defendants was the moving force in causing Plaintiffs' injuries.

## FOURTH CAUSE OF ACTION

### Battery – Against Carter and Officer Defendants

79. Plaintiff hereby incorporates and re-alleges Paragraphs 1 to 52 herein in full.

80. Both Carter and the Officer Defendants intentionally discharged their weapons from moving vehicles.

81. Plaintiff was struck either by a shot from Carter or by the Officer Defendants.

82. Plaintiff's injuries described in this Complaint were caused by the gunshot wound he suffered as a result of the firefight between the Officer Defendants and Carter.

# FIFTH CAUSE OF ACTION

## 42 U.S.C. § 1983 – Against BPD Defendants

### (Deprivation of Fourth and Fourteenth Amendment Rights)

83. Plaintiff hereby incorporates and Paragraphs 1 through 52 of this Complaint as if set forth in full herein, and states the following facts in the alternative to those stated in Paragraphs 53 to 71.

84. Plaintiff had a clearly established right under the Fourteenth Amendment to be free from deprivations of liberty without due process of law. Civilian injury during inherently dangerous police chases has been well-established as a violation of Fourteenth Amendment Rights at all times relevant to this Complaint.

85. 42 U.S.C. § 1983 provides that:

"Every person, who under color of any statute, ordinance, regulation, custom or usage of any state or territory or the District of Columbia subjects or causes to be subjected to any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the constitution and law shall be liable to the party injured in an action at law, suit in equity, or other appropriate proceeding for redress . . .."

86. The Officer Defendants' continuation of a chase of Carter's vehicle after Carter began firing at police officers from his moving vehicle was performed in reckless disregard of the risks to Baltimore citizens including Plaintiff.

87. The Officer Defendants were fully aware of the fact that Carter was engaging them in a firefight both through their own observations and through

BPD dispatch, and the firefight created by the high-speed chase posed an unreasonable risk to citizens of Baltimore, including Plaintiff.

88. BPD maintains a custom or practice wherein officers continue to chase fleeing motor vehicle operators who shoot at officers from their vehicle.

89. Such custom or practice is maintained in reckless disregard for the rights and safety of Baltimore citizens, including Plaintiff.

90. BPD fails to train its officers to disengage from high speed chases when the target initiates a firefight with officers.

91. Each of the Policymaker Defendants are responsible for implementing and enforcing BPD policy in regards to the termination or continuation of criminal apprehension by high speed chase.

92. An unknown Officer Defendant or Doe Defendant, fired at Carter's vehicle from his own moving vehicle in reckless disregard for the rights and safety of Baltimore citizens, including Plaintiff.

93. The Officer Defendant who fired at Carter's vehicle was fully aware of the unreasonable risk presented to Baltimore citizens, including Plaintiff, by his or her actions.

94. BPD maintains a custom or practice wherein its officers frequently shoot or return fire at fleeing suspects.

95. Such custom or practice is maintained in reckless disregard for the rights and safety of Baltimore citizens, including Plaintiff.

96. BPD fails to train its officers to refrain from engaging in firefights from moving vehicles.

97. On information and belief, Plaintiff's injuries were caused by shots fired from the Officer Defendants.

98. Each of the policies, customs, patterns or practices described above were moving forces in causing Plaintiff's injuries described herein.

99. The BPD Defendants' conduct in initiating the chase, continuing the chase, and shooting at Carter displayed a reckless disregard for Plaintiff's rights, who is now partially paralyzed for the rest of his life.

100. Each of the Policymaker Defendants are responsible for implementing and enforcing BPD policy in regards to engaging in firefights with fleeing criminal suspects.

## SIXTH CAUSE OF ACTION

### Violation of Article 10, 24, 26 of the MD Decl. of Rights – Against BPD Defendants

101. Plaintiff hereby incorporates and re-alleges each paragraphs 1 through 52 Complaint as if set forth in full herein and states the following facts in the alternative to paragraphs 53 to 71.

102. Causes of action for violation of individual rights to due process secured by Article 24 of the Maryland Declaration of Rights are analyzed *in para materia* to the U.S. Constitution's Fourteenth Amendment.

103. Each of the Defendants named in this Second Cause of Action, deprived Plaintiff of his right to due process through Article 24 due to their collective disregard for the clear, present, and highly dangerous risks presented by their conduct.

104. As a direct result of the Defendants' unlawful conduct, Plaintiff suffered tremendous pain, injuries, anguish, suffering, and emotional distress.

105. Plaintiff is further entitled to attorney's fees and costs, as well as pre-judgment interest and costs as allowable under the Maryland Declaration of Rights.

106. Plaintiff is entitled to punitive damages these Defendants' in that their actions were made maliciously, willfully, and with a reckless and wanton disregard of Plaintiff's life and constitutional rights.

107. WHEREFORE, Plaintiff, Terril Corbitt, respectfully request that this Court enter a judgment in their favor and against Defendants BALTIMORE CITY POLICE DEPARTMENT ("BPD"); EPIFANO TORRES, JR.; DUREL HAIRSTON; JEFFREY RIVERA; JONATHAN JONES; JOHN WITTER; STEVEN MCDONALD; EUGENEO COKER; JASMIN ROWLETT; MICHAEL BALDIWIN; STEVEN FOSTER; NICHOLAS BILLINGS; LINDSON AGELLA; TIMOTHY BARDZIK; JAMES WAGSTER; REBECCA JACKSON; RACHEL HARE; ALAN DAMIANI; JENNIFER INGBRETSON; COMMISSIONER KEVIN DAVIS ("DAVIS"); CHIEF T.J. SMITH ("SMITH"); JOSEPH ALLEN ("ALLEN"); JOANN JACKSON ("J. Jackson"); MAUSEAN CARTER ("CARTER"); and certain unknown Defendants ("Does") awarding compensatory damages, punitive damages, attorneys' fees and costs against each Defendant, and any other relief this Court deems just and appropriate.

## JURY DEMAND

Plaintiff Terrell Corbitt hereby demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court grant the following relief:

1. For all damages resulting from negligence, $2,500,000.00;

2. For all damages resulting from gross negligence, $3,000,000.00;

3. For all damages resulting from reckless, grossly negligent, or intentional conduct, $5,000,000.00;

4. As punitive damages to deter future violations, $1,000,000.00;

5. For attorneys' fees as may be appropriate by law or by statute; and

6. For such other and further relief as this Court may deem appropriate.

      /s/ Fareed Nassor Hayat
Fareed Nassor Hayat, Esq.
THE PEOPLE'S LAW FIRM, LLC
200 E. Lexington St., Suite 1111
Baltimore, MD 21202