IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **TERRELL CORBITT,** | * | |
| **Plaintiffs,** | * | |
| v. | * | **Civil Action No. RDB-20-3431** |
| **BALTIMORE CITY POLICE** | * | |
| **DEPARTMENT,** *et al.,* | * | |
| **Defendants.** | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## <u>MEMORANDUM OPINION</u>

On December 15, 2017, Plaintiff Terrell Corbitt ("Plaintiff" or "Corbitt") was struck by a stray bullet as Baltimore City Police officers pursued a vehicle through the streets of Baltimore City, exchanging fire with the eluding vehicle.  On November 24, 2020, Plaintiff Corbitt filed a six-count Complaint seeking damages for his injuries against the Baltimore City Police Department ("BPD"), former BPD Commissioner Kevin Davis ("Davis"), and former Baltimore City Police Chief T.J.ith ("Smith"), as well as eighteen other BPD officers (collectively "Officer Defendants"), other BPD employees, and other individuals allegedly involved in the incident.  (ECF No. 1.)

Plaintiff Corbitt appears to allege claims against the BPD and Defendants Davis and Smith in four of the six counts of the Complaint.  In Counts I and III he asserts claims for negligence and/or gross negligence and negligent supervision under Maryland law.  In Count V he asserts a claim under 42 U.S.C. § 1983 for deprivation of his rights under the due process clause of the Fourteenth Amendment to the U.S. Constitution.  In Count VI he alleges

violation of the Maryland Declaration of Rights on the same grounds as the Section 1983 claim.  However, it is unclear whether the Plaintiff adequately complied with the notice requirement of the Local Government Tort Claims Act in order to bring a suit for unliquidated damages against a local government and its employees.  Even assuming he did provide proper notice, the doctrine of State sovereign immunity bars the Plaintiff's state law claims against the BPD and Davis and Smith in their official capacities as Commissioner and Chief of the BPD.  Moreover, the Complaint is devoid of any specific factual allegations related to the BPD, Davis, and Smith.  Corbitt has failed to state any plausible claim for relief against these three Defendants.

Accordingly, Davis, Smith, and the BPD's pending Motion to Dismiss (ECF No. 20) is GRANTED.  With respect to the Baltimore City Police Department and Defendants Davis and Smith in their official capacities, Counts I, III, and VI are DISMISSED WITH PREJUDICE.  However, with respect to the Count V *Monell* claim against the Baltimore City Police Department as well as Counts I, III, V, and VI as alleged against Defendants Davis and Smith in their individual capacities, the counts are DISMISSED WITHOUT PREJUDICE to the filing of an Amended Complaint within a specified time period.

## BACKGROUND

In ruling on a motion to dismiss, this Court "accept[s] as true all well-pleaded facts in a complaint and construe[s] them in the light most favorable to the plaintiff." *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017) (citing *SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 422 (4th Cir. 2015)).  Plaintiff Corbitt is an individual and resident of the State of Maryland.  (ECF No. 1 ¶ 11.)  The Baltimore City Police Department ("BPD") is an

agency of the state of Maryland.  (*Id.* ¶ 12.)  Defendant Davis was at all times relevant to the Complaint the Commissioner of the BPD.  (*Id.* ¶ 32.)  Defendant Smith was the Chief of Police for Baltimore City.  (*Id.* ¶ 32.)  The BPD is responsible for conducting criminal investigations and apprehension in a reasonable manner to protect and life and well-being of Maryland residents.  (*Id.* ¶ 12.)  The Plaintiff alleges that the BPD, through policymakers such as Defendants Davis and Smith, creates, implements, and ratifies policies, practices, habits, customs and procedures, and is responsible for the training and supervision of officers regarding apprehension of suspected criminals.  (*Id.*)  He contends that such responsibilities extend to the training and supervision of officers with respect to high-speed car chases.  (*Id.*)

On or about December 15, 2017, one of the Officer Defendants[1] detained Mausean Carter ("Carter") at a traffic stop on Reisterstown Road.  (*Id.* ¶ 38.)  Corbitt contends that Carter was stopped because the window tinting on his automobile exceeded legal limits.  (*Id.*)  The Officer Defendant allegedly told another BPD officer and BPD dispatch that he believed Carter's vehicle had been involved in a recent shooting.  (*Id.* ¶ 39.)  The BPD dispatch operator authorized the Officer Defendant to detain Carter while the dispatch investigated his claim.  (*Id.* ¶ 40.)  The Officer Defendant then instructed Carter to exit the vehicle, but Carter ignored the officer's instructions and fled the scene.  (*Id.* ¶ 41.)  The Officer Defendant immediately returned to his own vehicle and began to pursue Carter northbound on Reisterstown Road.  (*Id.*)  Carter began firing shots at the Officer Defendant and his vehicle as he began his pursuit.  (*Id.* ¶ 42.)

---

[1] The Plaintiff does not specify as to which of the eighteen Officer Defendants he seeks to refer.

The Officer Defendant relayed information regarding the pursuit to the BPD dispatch officers, who promptly informed all BPD officers that Carter had a rifle in the car.  (*Id.* ¶¶ 42-43.)  A BPD helicopter was deployed to track Carter's trajectory during the pursuit.  (*Id.* ¶ 44.)  The helicopter relayed all information regarding the pursuit to all involved officers as it happened in real time.  (*Id.*)  Carter continued to fire at pursuing police vehicles.  (*Id.* ¶ 45.)  The helicopter informed all Officer Defendants involved in the pursuit to exercise care because of the shots fired and instructed them to pull back if they did not feel safe, as the helicopter could continue to follow Carter.  (*Id.* ¶¶ 46, 48.)  The helicopter further advised the Officer Defendants to keep their distance.  (*Id.* ¶ 48.)  At least one Officer Defendant returned fire at Carter's vehicle.  (*Id.* ¶ 49.)

After approximately six minutes of pursuit, Carter's vehicle was disabled by police gunfire around the 1800 block of Gwen's Fall Road.  (*Id.* ¶ 50.)  During the exchange of fire, Corbitt was struck in the head by a stray bullet while sitting in the back of his cousin's vehicle.  (*Id.* ¶ 51.)  Corbitt survived, but he remains paralyzed on the left side of his body.  (*Id.* ¶ 52.)

On November 24, 2020, Plaintiff Corbitt filed the presently pending suit against the BPD, Davis, Smith, and the other Defendants.  The six-count Complaint appears to allege four claims against the BPD, Davis, and Smith.  In Count I of the Complaint, the Plaintiff alleges negligence and gross negligence under Maryland law against "the BPD Defendants," which this Court presumes refers to the BPD, Davis and Smith, as well the Officer Defendants and other BPD employees alleged involved in the December 2017 incident.  (*Id.* ¶ 53-65.)  In Count I, Plaintiff Corbitt makes allegations that the Officer Defendants had a duty to apprehend criminals in a reasonable manner and according to the professional standards

applicable to law enforcement officers.  (*Id.* ¶ 54.)  He alleges that the Officer Defendants breached their duty as police officers in three distinct ways: (1) by initiating a high-speed chase to apprehend Carter with knowledge that he was suspected for a series of shootings; (2) by continuing to chase Carter after he began opening fire on public streets during the chase; and (3) by returning fire from a moving vehicle.  (*Id.* ¶¶ 55-61.)

In Count III, the Plaintiff asserts a claim for negligent supervision against the "Policymaker Defendants."  (*Id.* ¶¶ 72-78.)  Corbitt uses "Policymaking Defendants" to refer to Davis, Smith, and the BPD.  He alleges that at all times relevant to the Complaint, the Officer Defendants were operating vehicles owned by the State of Maryland, the BPD, or another governmental entity.  (*Id.* ¶ 73.)  The Officer Defendants were agents and/or employees of the BPD, as managed by Defendants Davis and Smith, and were acting in furtherance of the business and duty of the BPD.  (*Id.* ¶ 74.)  Corbitt asserts that Davis, Smith, and the BPD, had a duty to adequately and appropriately train the officers employed by the BPD and to adequately and appropriately discipline them when they failed to adhere to their duties as police officers.  (*Id.* ¶ 75.)  He also asserts that as a result of Davis, Smith, and the BPD's failure to train the Officer Defendants, the Officer Defendants continued to chase Carter in his vehicle even after he began to fire weapons on the open streets of the city, fired back at Carter, and thereby created a cross-fire endangering "hundreds" of bystanders in the area.  (*Id.* ¶ 76.)  "The Officer Defendants' decision to discharge their weapons from a moving vehicle was the result of the Policymaker Defendants' failure to train them to refrain from doing so during car chases of criminal suspects."  (*Id.* ¶ 77.)

Count V asserts a claim under 42 U.S.C. § 1983 for deprivation of rights under the

Fourteenth Amendment to the U.S. Constitution against "the BPD Defendants."[2]  (*Id.* ¶¶ 83-100.)  With respect to the BPD, this claim is alleged pursuant to *Monell v. Department of Social Services*, in which the U.S. Supreme Court determined that local governmental bodies may be liable under Section 1983 based on the unconstitutional conduct of individual defendants if those defendants were executing an official policy or custom of the local government when they violated a plaintiff's rights.  436 U.S. 658, 690 (1978).  In this case, Plaintiff Corbitt alleges that the BPD maintains a custom or practice wherein: (1) officers continue to chase fleeing motor vehicle operators who have shot at officers from their vehicles, and (2) officers frequently shoot or return fire at fleeing suspects.  (*Id.* ¶¶ 88, 94.)  He alleges that the BPD fails to train its officers to disengage from high-speed chases when the target initiates a firefight with officers or to refrain from engaging in firefights from moving vehicles.  (*Id.* ¶¶ 90, 96.)  He further asserts that the BPD, as well as Davis and Smith, were responsible for implementing and enforcing BPD policy in regards to the termination or continuation of criminal apprehension by high-speed chase and engaging in firefights with fleeing criminal suspects.  (*Id.* ¶¶ 91, 100.)

Count VI alleges violations of Articles 10, 24, and 26 of the Maryland Declaration of Rights.  (*Id.* ¶¶ 101-07.)  As Plaintiff Corbitt asserts, causes of action for violation of individual rights to due process secured by Article 24 of the Maryland Declaration of Rights are analyzed *in pari materia* to the U.S. Constitution's Fourteenth Amendment.  (*Id.* ¶ 102.)  For the same reasons asserted throughout the rest of the Complaint, Plaintiff Corbitt seeks recovery of

---

[2] The Count is entitled "Deprivation of Fourth and Fourteenth Amendment Rights," but the Complaint is devoid of allegations related to the Fourth Amendment.

damages including punitive damages, attorney's fees and costs, prejudgment interest and costs under the Maryland Declaration of Rights.  (*Id.* ¶¶ 105-06.)

On March 12, 2021, the BPD, former Commissioner Davis, and former Chief Smith filed the presently pending Motion to Dismiss (ECF No. 20) seeking dismissal of all claims against each of them.  These three Defendants assert that Corbitt failed to state a claim as a matter of law because he failed to plead sufficient facts to satisfy the procedural obligations of the Local Government Tort Claims Act.  (ECF No. 20-1.)  Alternatively, the Defendants assert that the state law claims against them are barred by principals of State sovereign immunity and/or public official immunity; that the Section 1983 action is barred by the Eleventh Amendment to the U.S. Constitution; and that the Plaintiff has generally failed to state a plausible claim for relief against them.  (*Id.*)

## STANDARD OF REVIEW

### A.        Rule 12(b)(6)

Rule 8(a)(2) of the Federal Rules of Civil Procedure provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted.  The purpose of Rule 12(b)(6) is "to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."  *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).

The United States Supreme Court's opinions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), "require that complaints in civil actions

be alleged with greater specificity than previously was required." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted).  In *Twombly*, the Supreme Court articulated "[t]wo working principles" that courts must employ when ruling on Rule 12(b)(6) motions to dismiss. *Iqbal*, 556 U.S. at 678.  First, while a court must accept as true all factual allegations contained in the complaint, legal conclusions drawn from those facts are not afforded such deference. *Id.* (stating that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *see also Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012) ("Although we are constrained to take the facts in the light most favorable to the plaintiff, we need not accept legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments." (internal quotation marks omitted)). Second, a complaint must be dismissed if it does not allege "a plausible claim for relief." *Iqbal*, 556 U.S. at 679.

## B.  Rule 12(b)(1)

The Baltimore City Police Department asserts a facial challenge to this Court's subject matter jurisdiction, arguing that the allegations of the complaint establish its immunity to suit under the Eleventh Amendment to the United States Constitution and Maryland law.  *See Cunningham v. Gen. Dynamics Info. Tech., Inc.*, 888 F.3d 640, 649 (4th Cir. 2018) (holding that sovereign immunity deprives the court of subject matter jurisdiction).  A motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction challenges a court's authority to hear the matter brought by a complaint.  *See Davis v. Thompson*, 367 F. Supp. 2d 792, 799 (D. Md. 2005).  A challenge to jurisdiction under Rule 12(b)(1) may proceed either as a facial challenge, asserting that the allegations in the complaint

are insufficient to establish subject matter jurisdiction, or a factual challenge, asserting "that the jurisdictional allegations of the complaint [are] not true." *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (citation omitted).  The Defendants in this case clearly present a facial challenge and accordingly "must show that [the] complaint fails to allege facts upon which subject matter can be predicated." *Amador v. Mnuchin*, 476 F. Supp. 3d 125, 139 (D. Md. Aug. 5, 2020) (quoting *Hutton v. Nat'l Bd. of Examn's Inc.*, 892 F.3d 613, 620-21 (4th Cir. 2018)).

### C. Section 1983

In Count V of the Complaint, the Plaintiff alleges violations of the Fourteenth Amendment to the United States Constitution, pursuant to 42 U.S.C. § 1983.  Under Section 1983, a plaintiff may file suit against any person, who acting under color of state law, "subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States.  *See* 42 U.S.C. § 1983.  To state a claim under Section 1983, a plaintiff must allege that: (1) a right conferred by the Constitution or the laws of the United States was violated and (2) the alleged violation was committed by a person acting under the color of state law.  *See West v. Atkins*, 487 U.S. 42, 48 (1988).

## ANALYSIS

### I.   Compliance with Local Government Tort Claims Act

The Local Government Tort Claims Act ("LGTCA") prohibits actions for unliquidated damages against a local government or its employees unless notice of the claim is given within one year after the injury.  Md. Code Ann., Cts. & Jud. Proc. § 5-304; *see also Hansen v. City of Laurel*, 25 A.3d 122 (Md. 2011) (holding that the notice requirement of § 5-304 is a procedural

obligation that a plaintiff must satisfy).  The BPD is defined as a "local government" for the limited purposes of the LGTCA.  *See* Md. Code Ann., Cts. & Jud. Proc. § 5-301(d)(21).  Under the LGTCA, a plaintiff must specifically provide notice to the "corporate authorities of that local government," which in the case of the BPD is the Baltimore City Commissioner or City Solicitor.  *Id.* § 5-304(c).  "A plaintiff must not only satisfy the notice requirements strictly and substantially, but also plead such satisfaction in his/her complaint."  *Hansen*, 25 A.3d at 138.

In this case, Plaintiff Corbitt alleges that he "provided notice of his claim against the state of Maryland to the Treasurer."  (ECF No. 1 ¶ 12.)  Defendants Davis, Smith, and the BPD contend that such allegation fails both the notice and pleading requirements of the LGTCA, as Corbitt was supposed to notify the Commissioner or City Solicitor in this case. (ECF No. 20-1 at 5-6.)  In *Hansen v. City of Laurel*, a plaintiff alleged that he was terminated as a result of age and disability discrimination and sought to recover damages from the City of Laurel.  996 A.2d 882 (Md. Ct. Spec. App. June 2, 2010), *aff'd*, 25 A.3d 122.  He alleged that he sent a letter and the relevant charge of discrimination to the "City Administrator."  *Id.* at 886.  However, the LGTCA explicitly required the plaintiff to instead notify the "City Attorney."  *Id.*  The Maryland court held that the plaintiff had not strictly complied with the terms of the LGTCA and dismissed the plaintiff's claims against the city.  *Id.* at 891.

In responding to the Defendants' Motion to Dismiss, Corbitt contends that he "sent the requisite notice to both the Maryland State Treasurer and the Baltimore City Solicitor," and he seeks leave to amend his pleading to allege such facts if this Court were to find his notice allegation is insufficient as currently pled.  (ECF No. 23-1 at 3.)  This Court will for purposes of this analysis permit that amendment and accept the representations of Plaintiff's

counsel that the requisite notice was sent to not only the Maryland State Treasurer but also to the Baltimore City Solicitor.  However, even granting this amendment for purposes of this analysis, Corbitt's claims against Defendants Davis, Smith, and the BPD are either barred by State sovereign immunity or fail to otherwise state a claim for relief.  Nevertheless, Corbitt will be granted a period of time in which to file an Amended Complaint with respect to certain claims in this case.

## II.    **Count V** *Monell* **Claim**

Count V of the Complaint alleges violation of 42 U.S.C. § 1983 against the "BPD Defendants" for deprivation of rights under the Fourteenth Amendment to the U.S. Constitution.  (ECF No. 1 ¶¶ 83-100.)  The BPD moves to dismiss Count V pursuant to Rule 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.  With respect to Rule 12(b)(1), the BPD contends that it is immune from suit in federal court pursuant to the Eleventh Amendment, and therefore, this Court lacks jurisdiction over the Plaintiffs' claims.  (ECF No. 20-1 at 8-10.)

This Court has had numerous opportunities to address the question of whether the BPD is entitled to sovereign immunity under the Eleventh Amendment.  *See, e.g.*, *Chestnut v. Kincaid*, RDB-20-2342, 2021 WL 1662469, at *14 (D. Md. Apr. 28, 2021); *McPherson v. Baltimore Police Dep't*, 494 F. Supp. 3d 269, 288-89 (D. Md. 2020); *Johnson v. Baltimore Police Dep't*, 452 F. Supp. 3d 283, 299 (D. Md. 2020); *Johnson v. Baltimore Police Dep't*, ELH-19-0698, 2020 WL 1169739, at *27 (D. Md. Mar. 10, 2020); *Burley v. Baltimore Police Dep't*, 422 F. Supp. 3d 986, 1023-26 (D. Md. 2019); *Chin v. City of Baltimore*, 241 F. Supp. 2d 546, 548-49 (D. Md. 2003).

In all such cases, this Court has determined that BPD is not entitled to such protection from suit. *Id.*

As this Court recently explained in *Chestnut*, "states and state agencies enjoy immunity from suit brought in federal court, but 'political subdivisions of the state, such as municipalities and counties" are not protected by the doctrine.'" 2021 WL 1662469, at *14 (citing *Johnson*, 2020 WL 116739, at *26 (internal citation omitted)). Numerous factors weigh in favor of the BPD being considered a political subdivision of the state, rather than a state agency: the BPD is immunized by the Mayor and City Council of Baltimore; the BPD is expressly included in the list of local government entities covered by Maryland's Local Government Torts Claims Act ("LGTCA"); the BPD Commissioner is selected by the Mayor; the City of Baltimore maintains the BPD's pension and retirement benefits; the City also provides substantial funding to the BPD, including the salaries of the BPD Commissioner and BPD Officers; and the City expressly permits the BPD Commissioner to use the funding that the BPD receives from the City to defend officers in lawsuits. *Johnson*, 2020 116739, at *26-*27. Additionally, the BPD's authority "is not state-wide but rather limited to the City limits" and is therefore "distinctly local." *Id.* at *27. Although the Maryland Court of Appeals has at times recognized the BPD as a state agency, an overall balancing of factors continues to weigh in favor of a finding that the BPD is not entitled to sovereign immunity. *Id.* at *28 (citing *Mayor & City Council of Baltimore*, 541 A.2d 1122, 1138 (Md. 2008) (internal citation omitted); *Clea v. Mayor & City of Baltimore*, 541 A.2d 1303, 1306-07 (Md. 1988)).

Quite simply, "rationales of this Court in its various decisions finding the BPD is not immunized from suit under the Eleventh Amendment are 'persuasive.'" *Chestnut*, 2021 WL

1662469, at *15 (quoting *McPherson*, 494 F. Supp. 3d at 288-89). As in *Chestnut*, this court hereby adopts the rationales of those previous opinions and concludes that the BPD is not entitled to sovereign immunity form Plaintiff's Section 1983 claims at this stage in the litigation. *Id.* "'[S]hould the Fourth Circuit issue an opinion in those cases to the contrary, this Court will entertain a motion for reconsideration on this issue.'" *Id.* (quoting *Johnson*, 452 F. Supp. 3d at 299).

Nevertheless, although the BPD is not protected by Eleventh Amendment immunity with respect to the Plaintiff's claim in Count V, this Court will dismiss the *Monell* claim pursuant to Rule 12(b)(6). A municipality, including a police department such as the BPD, cannot be held liable in a Section 1983 action under a theory of respondeat superior. *See Monnell*, 436 U.S. at 693-94. However, as noted above, in *Monell v. Department of Social Services*, the U.S. Supreme Court determined that local governmental bodies may be liable under Section 1983 based on the unconstitutional conduct of individual defendants if those defendants were executing an official policy or custom of the local government when they violated a plaintiff's rights. 436 U.S. at 690. *Monell* claims are brought against a municipality itself for its "*own* illegal acts."[3] *Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986) (citing *Monell*, 436 U.S. at 665-83).

---

[3] In opposition to the Defendants' Motion to Dismiss, Plaintiff Corbitt asserts that the has stated a *Monell* claim against the BPD as well as Davis and Smith. (ECF No. 23-1 at 9.) However, to any extent Corbitt seeks to make a *Monell* claim against Davis and Smith in their official capacities, he is making a claim against the BPD. *See Jones v. Chapman*, ELH-14-2627, 2015 WL 4509871, at *10 (D. Md. July 24, 2015) (holding that a suit against an individual BPD officer "in his official capacity is, in effect, a suit against the BPD"). *Monell* claims are not brought against individuals. *See Grim*, 2019 WL 5865561, at *8 ("The *Monell* Court explained that, when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may be fairly said to represent official policy, inflicts the injury the government as an entity is responsible under § 1983). To the extent Corbitt seeks to make a non-*Monell* Section 1983 claim against Davis and Smith in their individual capacities, such claim is addressed *infra*.

To plead a claim for *Monell* liability, a plaintiff must allege that (1) "the municipality had an unconstitutional policy or custom;" and (2) "the unconstitutional policy or custom caused a violation of the plaintiff's constitutional rights." *Johnson v. Baltimore Police Dep't*, No. ELH-19-00698, 2020 WL 1169739, at *30 (D. Md. Mar. 10, 2020) (citing *Bd. of Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403 (1997)); *Kirby v. City of Elizabeth City*, 388 F.3d 440, 451 (4th Cir. 2004), *cert. denied*, 547 U.S. 1187 (2006); *Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003)). A policy or custom for which a municipality may be held liable can arise in four ways:

> (1) through an express policy, such as a written ordinance or regulations; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that "manifest[s] deliberate indifference to the rights of citizens"; (4) through a practice that is so "persistent and widespread" as to constitute a "custom or usage with the force of law."

*Lytle*, 326 F.3d at 471 (quoting *Cater v. Morris,* 164 F.3d 215, 217 (4th Cir. 1999)). In Count V of the Complaint, Plaintiff Corbitt appears to allege that the BPD is liable under the third and fourth theories of liability in this case. With respect to each theory he fails to state a claim.

As Judge Hollander of this Court explained in *Grim v. Baltimore Police Department*, "'the inadequacy of police training may serve as the basis for § 1983 liability,' but 'only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact.'" No. ELH- 18-3864, 2019 WL 5865561, at *17 (D. Md. Nov. 8, 2019) (quoting *Canton v. Harris*, 489 U.S. 378, 388 (1989)). "[E]ven if 'a particular officer may be unsatisfactorily trained,' that 'will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from other factors other than a faulty training program.'" *Id* (citing *Canton*, 489 U.S. at 390-91). "'Neither will it suffice to prove that an injury or accident could have been avoided if an officer had better or more training, sufficient

to equip him to avoid the particular injury-causing conduct.'" *Id.* (quoting *Canton*, 489 U.S. at 391). To state a claim under Section 1983 based on a failure to train, a plaintiff must allege (1) "the nature of the training," (2) "that the training was a 'deliberate and conscious' choice by the municipality," and (3) "that the officer's conduct resulted from said training." *Id.* (quoting *Lewis v. Simms*, AW-11-CV-2171, 2012 WL 254024, at *3 (D. Md. Jan. 26, 2012) (internal citation omitted)).

Similarly, a plaintiff may allege violation of Section 1983 under a "condonation theory" of liability where "municipal policymakers fail 'to put a stop to or correct a widespread pattern or practice of unconstitutional conduct.'" *Id.* at *19 (citing *Owens v. Baltimore City State's Attorney's Office*, 767 F.3d 379, 402 (4th Cir. 2015) (internal quotation and citation omitted)). To assert a plausible claim for relief under such theory, a plaintiff must allege "a 'persistent and widespread practice[ ] of municipal officials,' the 'duration and frequency' of which indicate that policy makers (1) had actual or constructive knowledge of the conduct, and (2) failed to correct it due to their 'deliberate indifference.'" *Owens*, 767 F.3d at 402 (quoting *Spell v. McDaniel*, 824 F.2d 1380, 1386-91 (4th Cir. 1987)).

The Plaintiff has simply failed to allege a failure to train or a condonation claim in this case. He asserts absolutely no facts to support his contention that the BPD, through Davis and Smith, failed to train or condoned the activity of BPD Officers. The only facts alleged in support of his claims are that the Officers Defendants pursued Carter as he shot at them and that at least one Officer Defendant shot back. There are no allegations with respect to how officers were or were not trained; whether there have been other similar incidents; or whether the BPD, Davis, or Smith were aware of any improper conduct. By extension, the Plaintiff

has not connected any training or indifference to the incident that resulted in Corbitt's injury in this case.  "A single incident alone will not establish a policy or custom and requisite causal connection to [Section] 1983 deprivation of rights."  *Hopkins v. Maryland*, RDB-11-1761, 2012 WL 181501, at *3 (D. Md. Jan. 19, 2012) (citing *City of Oklahoma v. Tuttle*, 471 U.S. 808, 823-24 (1985)).  The fact of the December 15, 2017 pursuit itself is simply not sufficient to state a plausible claim for relief under Section 1983.  Accordingly, with respect to the *Monell* claim as alleged against the Baltimore City Police Department, Count V is DISMISSED WITHOUT PREJUDICE to the filing of an Amended Complaint.

### III.   State Law Claims against the BPD and Davis and Smith in their Official Capacities

In Counts I (negligence and gross negligence), III (negligent supervision), and VI (Maryland Declaration of Rights), Plaintiff Corbitt asserts claims against the BPD, Davis, and Smith under Maryland law.  The BPD contends that State immunity forecloses Plaintiff Corbitt's claims as to these state law counts.  Defendants Davis and Smith also contend that they are protected by State sovereign immunity to the extent the claims are asserted against them in their official capacities.

As Judge Hollander explained in *Chin*, although the BPD is not immune from suit under Section 1983 pursuant to the Eleventh Amendment, "with respect to state law causes of action, the result is different."  241 F. Supp. 2d at 548.  "State sovereign immunity 'protects the State not only from damage actions for ordinary torts but also from such actions for State constitutional torts."  *Id.* (citing *Baltimore Police Dep't v. Cherkes*, 780 A.2d 410, 422-23 (Md. Ct. Spec. App. 2001)); *see also Grim*, 2019 WL 5865561, at *15.  The doctrine is applicable to a state's agencies and instrumentalities.  *Grim*, 2019 WL 5865561, at *15 (citing *Proctor v. Wash.*

*Metro. Area Transit Auth.*, 990 A.2d 1048, 1058 (Md. 2010) (internal citation omitted)).  Unless the Maryland General Assembly has waived State sovereign immunity, the doctrine bars an individual plaintiff from maintaining a suit for money damages against the State of Maryland or one of its agencies for violations of State law.  *Id.* (citing, *inter alia*, *State v. Sharefeldin*, 854 A.2d 1208, 1214 (Md. 2004)).  Maryland law defines the BPD as a State agency.  *Id.* (citing *Mayor & City Council of Baltimore v. Clark*, 944 A.2d 1122, 1128 (Md. 2008)).  Accordingly, on numerous occasions, this Court has held that "the Baltimore Police Department enjoys State sovereign immunity from actions for damages based on state common law torts or state constitutional torts."  *Chin*, 241 F. Supp. 2d at 547-48 (D. Md. 2003) (citing *Cherkes*, 780 A.2d at 422-23; *see also Grim*, 2019 WL 5865561, at *15.

This Court has also held "a claim against a state official in his official capacity is analogous to asserting a claim against the entity of which the official is an agent."  *Griffin v. Salisbury Police Dep't*, RDB-20-2511, 2020 WL 6135148, at *4 (D. Md. Oct. 19, 2020) (citing *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)).  To that end, a suit against an individual BPD officer "in his official capacity is, in effect, a suit against the BPD."  *Jones*, 2015 WL 4509871, at *10.  Therefore, individual officers are protected by State sovereign immunity when sued in their official capacities.  *Id.*

The claims in Counts I, III, and VI filed against the BPD and Davis and Smith in their official capacities are barred by Maryland law and therefore DISMISSED WITH PREJUDICE as to those three Defendants.

## IV.   Claims against Davis and Smith in their Individual Capacities

To the extent Counts I, III, V, and VI are brought against Davis and Smith in their

individual capacities, Plaintiff Corbitt fails to state a plausible claim for relief. Corbitt's Complaint fails to state any facts specific to Davis and Smith to suggest their personal involvement in the events of this case. The only allegations specifically related to Davis and Smith are that they served as Commissioner and Chief of the BPD at the times relevant to the Complaint and other conclusory statements such as that they were "directly or jointly responsible for creating, implementing, and ratifying policy regarding criminal apprehension through car chases for the BPD at all times relevant to this Complaint" (ECF No. 1 ¶¶ 32-33); "ha[d] a duty to adequately and appropriately train the officers employed by the BPD" (*id.* ¶ 75); and failed "to train the Officer Defendants" (*id.* ¶ 76). These conclusory allegations are insufficient to support any of Corbitt's claims for relief.

With respect to claims brought pursuant to Section 1983, a plaintiff must allege some facts in support of a defendant's personal connection to the plaintiff's deprivation of rights. *See Vinnedge v. Gibbs*, 550 F.2d 926, 929 (4th Cir. 1977) (noting that in the context of a claim under Section 1983, "[l]iability will only lie where it is affirmatively shown that the official charged acted personally in the deprivation of the plaintiffs' rights"). This Court has required the same that with respect to claims under Maryland constitutional law.[4] *See Williams v. Bd. of Trs. of Frederick Cmty. Coll.*, No. CCB-03-2123, 2004 WL 45517, at *3-*4 (D. Md. Jan. 8, 2004) (dismissing claims filed under Section 1983 and Maryland constitutional law where plaintiff

---

[4] As the Plaintiff pleads in his Complaint, causes of action for violation of individual rights to due process secured by Article 24 of the Maryland Declaration of Rights are analyzed in *pari materia* to the U.S. Constitution's Fourteenth Amendment. (ECF No. ¶ 102); *see also Allmond v. Dep't of Health & Mental Hygiene*, 141 A.3d 57, 67 (Md. 2016) (noting that the Maryland Declaration of Rights is considered the Maryland counterpart to the due process clauses of the Fifth and Fourteenth Amendments and "[u]nless there is good reason to do otherwise, 'state constitutional provisions [such as Article 24] are in *pari materia* with their federal counterparts or are the equivalent of federal constitutional provisions or generally should be interpreted in the same manner as federal provisions.'" (quoting *Dua v. Comcast Cable of Maryland, Inc.*, 805 A.2d 1061 (Md. 2002)).

failed to allege facts specific to named defendants because "[w]ithout such personal involvement, th[ose] defendants [could] not be liable in an individual capacity for constitutional infractions alleged against them").   Allegations that Davis was the Commissioner and Smith was the Chief of the BPD are insufficient to create the type of personal connection the law requires.   In *Staten v. Batts*, the plaintiff asserted that a Baltimore City Police Commissioner was liable under Section 1983, alleging "'[n]othing done in reference to the Baltimore City Policy Department is done without approval by [the Commissioner].   He is responsible for the Baltimore City Police and their actions.'"   No. CCB-15-599, 2015 WL 4984858, at *3 (D. Md. Aug. 17, 2015).   As Judge Blake of this Court held, such "general and conclusory assertions . . . do not provide a basis for finding supervisory liability." *Id.*   Corbitt's allegations are insufficient to state a claim against Davis and Smith as individuals under Section 1983 in Count V and under Maryland constitutional law as alleged in Count VI.

In Count I, Corbitt asserts a claim for negligence or gross negligence against "the BPD Defendants," which seems to include Defendants Davis and Smith.   However, Davis and Smith are never mentioned in any of the allegations under Count I—the Plaintiff refers only to the Officer Defendants.   While Davis and Smith are specifically named in Count III, in which the Plaintiff asserts a claim for negligent supervision, the allegations are again limited to conclusory statements that Davis and Smith had a duty to train and supervise BPD officers and failed to do so.   (ECF No. 1 ¶¶ 75-78.)   Mere "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

Finally, this Court notes that even if Corbitt had provided any factual allegations to

support his state law claims in Counts I and III, to the extent such claims are based on Davis and Smith's alleged negligence, they may be entitled to public official immunity under Maryland law.  Public official immunity protects public officials from claims for negligence related to their performance of discretionary activities.  *See Cherkes*, 780 A.2d at 437.  Maryland law has recognized policeman as "public officials" and that "the actions of police officers within the scope of their law enforcement function are quintessential discretionary acts." *Williams v. Price George's Cnty.*, 685 A.2d 884, 896 (Md. Ct. Spec. App. 1996) (citing *Robinson v. Bd. of Cnty. Comm'rs*, 278 A.2d 71 (Md. 1971)).  Public official immunity is qualified—it does not apply to acts of gross negligence or those made with "malice."  *See Cherkes*, 780 A.2d at 420 (citing *Town of Port Deposit v. Petetit*, 688 A.2d 54, 60 (Md. Ct. Spec. App. 1997)).  Just as the Plaintiff has not alleged any facts specifically tying Davis and Smith to the December 2017 incident at issue in this case, he has also not alleged any conduct amounting to gross negligence or malice on the part of these Defendants, and public official immunity may therefore apply in this case.

Quite simply, Corbitt's Complaint is devoid of any allegations specific to Davis and Smith beyond conclusory statements regarding their responsibility to oversee the BPD and the work and training of its officers.  Such allegations are insufficient to state a claim for relief against Davis and Smith.  As such, Counts I, III, V, and VI as alleged against Davis and Smith in their individual capacities are DISMISSED WITHOUT PREJUDICE to the filing of an Amended Complaint.

## CONCLUSION

For the foregoing reasons, Defendants Davis, Smith, and the Baltimore City Police

Department's Motion to Dismiss (ECF No. 20) is GRANTED.  With respect to the Baltimore City Police Department and Defendants Davis and Smith in their official capacities, Counts I, III, and VI are DISMISSED WITH PREJUDICE.  Such claims are barred by State sovereign immunity.

However, with respect to the Count V *Monell* claim against the Baltimore City Police Department as well as Counts I, III, V, and VI as alleged against Defendants Davis and Smith in their individual capacities, Plaintiff Corbitt has failed to state a claim upon which relief can be granted..  As a general rule, leave to amend a complaint to address deficiencies in an original complaint is freely given pursuant to Rule 15(a).  *See* William W. Schwarzer, A. Wallace Tashima, & James M. Wagstaffe, *Federal Civil Procedure Before Trial* § 9:286.  Indeed, there is authority that a plaintiff should be given at least one opportunity to amend a complaint before a dismissal of the case with prejudice.  *See Silva v. Bieluch*, 351 F.3d 1045, 1048 (11th Cir. 2003).  If Corbitt possesses facts to cure such manifest deficiencies addressed in this Memorandum Opinion, he may file an Amended Complaint within fifteen days of this Opinion, *i.e.* by August 25, 2021.[5]  Claims against these three Defendants in an Amended Complaint may still be subject to dismissal by reason of repeated failure to cure deficiencies or futility of the amendment.  *Abagninin v. AMVAC Chem. Corp.*, 545 F.3d 733, 742 (9th Cir. 2008).  Accordingly, with respect to the Count V *Monell* claim against the Baltimore City Police Department as well as Counts I, III, V, and VI as alleged against Defendants Davis and Smith in their individual capacities, this Court's dismissal will be initially WITHOUT PREJUDICE.

---

[5] The time within which plaintiff must serve and file the amended complaint is ordinarily set by the court.  Schwarzer, Tashima & Wagstaffe, *Federal Civil Procedure* § 9:289.

If an Amended Complaint is not filed by August 25, 2021, the claims against the Defendants Baltimore City Police Department and Davis and Smith will be DISMISSED WITH PREJUDICE and those three Defendants will be terminated as parties to this case.

A separate Order follows.

Dated: August 10, 2021

_____/s/_____

Richard D. Bennett
United States District Judge