IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| TERRELL CORBITT, | * | |
| Plaintiffs, | * | |
| v. | * | Civil Action No. RDB-20-3431 |
| | * | |
| BALTIMORE CITY POLICE DEPARTMENT, *et al.*, | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

On December 15, 2017, Plaintiff Terrell Corbitt ("Plaintiff" or "Corbitt") was struck by a stray bullet as Baltimore City Police officers pursued a vehicle through the streets of Baltimore City and exchanged gunfire with a suspect. On August 25, 2021, Corbitt filed the operative seven-count Amended Complaint against the Baltimore City Police Department ("BPD"), former BPD Commissioner Kevin Davis ("Davis"), and former Baltimore City Police Chief T.J. Smith ("Smith"), as well as fourteen other BPD officers (collectively "Officer-Defendants") and other individuals allegedly involved in the incident. (ECF No. 27.) In Counts IV, VI, and VII, Plaintiff brings claims against BPD under 42 U.S.C. § 1983 for deprivations of his Fourteenth Amendment due process rights on three theories of *Monell* municipal liability.[1] (*Id.*) In Count V, Plaintiff brings a claim against Davis and Smith under 42 U.S.C. § 1983 on a theory of supervisory liability. (*Id.*)

---

[1] Pursuant to *Monell v. Department of Social Services*, 436 U.S. 658 (1978), local governmental bodies may be liable under 42 U.S.C. § 1983 for the unconstitutional actions of individual defendants "where those defendants were executing an official policy or custom of the local government resulting in a violation of the plaintiff's rights." 436 U.S. at 690–91.

Now pending is a Motion to Dismiss for Failure to State a Claim filed by Defendants BPD, Davis, and Smith in response to the Amended Complaint. (ECF No. 30.)[2] The parties' submissions have been reviewed and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2021). For the following reasons, Defendants' Motions to Dismiss (ECF No. 30) is GRANTED in part and DENIED in part. Specifically, Defendants' Motion is GRANTED as to Counts IV and VI, as Plaintiff fails to allege sufficient facts to support his § 1983 claims against the Baltimore City Police Department under the express policy and failure to train theories of *Monell* liability. However, the pending Motion is DENIED as to Counts V and VII. Plaintiff plausibly states a § 1983 claim against the Baltimore City Police Department under the condonation theory of *Monell* liability with respect to an alleged pattern of excessive force during vehicular pursuits. Corbitt plausibly pleads a § 1983 claim against Defendants Davis and Smith for supervisory liability for the same alleged pattern. Additionally, this Court cannot make a definitive ruling on Defendants' assertion of qualified immunity at this stage of the litigation. Accordingly, Defendant's pending Motion to Dismiss (ECF No. 30) is **GRANTED** in part and **DENIED** in part.

## BACKGROUND

In ruling on a motion to dismiss, this Court "accept[s] as true all well-pleaded facts in a complaint and construe[s] them in the light most favorable to the plaintiff." *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017) (citing *SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 422 (4th Cir. 2015)). Plaintiff Terrell Corbitt is a resident of the State of

---

[2] The remaining BPD officers and individuals named as defendants have not yet filed a response to the Amended Complaint and are unaffected by this opinion.

2

Maryland. (Am. Compl. ¶ 11, ECF No. 27.) The Baltimore City Police Department is an agency of the state of Maryland, and is responsible for conducting criminal investigation and apprehension in a reasonable manner to protect the life and well-being of Maryland residents. (*Id.* ¶ 12.) At all times relevant to the Complaint, Defendant Davis was the Commissioner of BPD, (*id.* ¶ 28), and Defendant Smith was a Police Chief for Baltimore City, (*id.* ¶ 29). Plaintiff alleges that BPD, through policymakers such as Defendants Davis and Smith, creates and implements policies, practices, and procedures regarding the apprehension of suspected criminals. (*Id.*) He contends that such responsibilities extend to the training and supervision of officers with respect to high-speed car chases. (*Id.*)

On or about December 15, 2017, Officer-Defendant Philip Lippe detained Mausean Carter ("Carter") at a traffic stop on Reisterstown Road. (*Id.* ¶ 67.) According to the complaint, Officer Lippe stopped Carter because the window tinting on his vehicle exceeded legal limits. (*Id.*) Officer Lippe informed another BPD officer and BPD dispatch that he believed Carter's vehicle resembled one that BPD was searching for in connection with recent homicides. (*Id.*) Officer Lippe's supervising Lieutenant authorized him to conduct a search of the vehicle. (*Id.*) When Officer Lippe instructed Carter to exit the vehicle, Carter ignored the instruction and fled the scene at a high rate of speed. (*Id.* ¶ 68.) Officer Lippe and his backup officer immediately returned to their vehicles and pursued Carter northbound on Reisterstown Road. (*Id.*) Carter began firing shots at the pursuing officers and continued firing at police vehicles as they passed multiple schools. (*Id.* ¶¶ 69–70.)

Officer Lippe relayed information regarding their chase location and the shots fired to BPD dispatch, pursuant to Policy 1503. (*Id.*) A BPD helicopter was deployed to track Carter's

trajectory during the pursuit (*Id.* ¶ 70.) The helicopter informed all Officer-Defendants to exercise care and be aware of intersections as they pursued at a high rate of speed. (*Id.*) The helicopter also advised the Officer-Defendants to keep their distance, as the helicopter could continue to follow Carter. (*Id.* ¶ 72.) However, police continued to pursue the suspect, who "sped past multiple pedestrians on the street, passed numerous cars and through heavy traffic, passed through upwards of thirty intersections, travelled down roads in the incorrect direction, maintained speeds of over 90 miles per hour, and engaged in the pursuit for over six minutes." (*Id.* ¶ 73) One police vehicle lost control and ended up on a residential sidewalk to avoid colliding head on with a third-party vehicle. (*Id.* ¶ 72) Carter was finally apprehended after his automobile was disabled at the 1800 block of Gwynns Falls Parkway. (*Id.* ¶ 75.)

During the chase, at least one Officer-Defendant fired three rounds at Carter from his moving vehicle and missed the suspect. (*Id.* ¶ 74.) At some point during this exchange of fire, Corbitt was struck in the head by a stray bullet as he was riding as a passenger in a car on the way to Home Depot. (*Id.* ¶¶ 76, 42.) Corbitt survived but suffered a severe brain injury and remains partially paralyzed. (*Id.* ¶ 49.)

On November 24, 2020, Plaintiff Corbitt filed a six-count Complaint alleging various tort and constitutional claims against Defendants BPD, Davis, and Smith, as well as eighteen Officer-Defendants, BPD employees, and other individuals allegedly involved in the incident. (ECF No. 1.) Defendants Davis, Smith, and BPD filed a Motion to Dismiss for Failure to State a Claim. (ECF No. 20.) On August 10, 2021, this Court granted the Motion to Dismiss. *Corbitt v. Balt. City Police Dep't*, No. RDB-20-3231, 2021 WL 3510579 (D. Md. Aug. 10, 2021). With respect to BPD, and Defendants Davis and Smith in their *official* capacities, Counts I, III,

and VI were dismissed with prejudice. *Id.* at *1.[3] Counts I, III, V, and VI, alleged against BPD and Defendants Davis and Smith in their *individual* capacities, were dismissed without prejudice. *Id.* at *9.

On August 25, 2021, Plaintiff filed the operative seven-count Amended Complaint alleging claims under 42 U.S.C. § 1983 against Defendants BPD, Davis, and Smith, as well as fourteen Officer-Defendants and various individuals allegedly involved in the incident. (ECF No. 27.) In Counts IV, VI, and VII Corbitt asserts claims against BPD under 42 U.S.C. § 1983 for deprivation of his rights Due Process Rights under the Fourteenth Amendment. (Am. Compl. ¶¶ 113, 126.) In Count V Plaintiff asserts a § 1983 supervisory liability claim against Davis and Smith. (*Id.* ¶¶ 116–33.) Plaintiff seeks compensatory damages, punitive damages, attorneys' fees, and costs against each Defendant. (*Id.* ¶ 151.)

On September 22, 2021, Defendants BPD, Davis, and Smith filed a Motion to Dismiss the Amended Complaint. (ECF No. 30.) BPD argues that Corbitt failed to plead a plausible § 1983 *Monell* claim. (Defs.' Mem. Supp. Mot. Dismiss 4–14, ECF No. 30-1.) Davis and Smith argue that Plaintiff failed to state a § 1983 supervisory liability claim. (*Id.* at 15–19.) Davis and Smith also invoke the doctrine of qualified immunity. (*Id.* at 19–21.)

This motion is now pending.

## STANDARD OF REVIEW

### I.    Rule 12(b)(6)

Rule 8(a)(2) of the Federal Rules of Civil Procedure provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."

---

[3] Counts I and III asserted claims for negligence, gross negligence, and negligent supervision. (*Id.*) Count VI alleged violations of the Maryland Declaration of Rights. (*Id.*)

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted. The purpose of Rule 12(b)(6) is "to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).

To survive a motion under Fed. R. Civ. P. 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) (quoting *Bell Atl., Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Under the plausibility standard, a complaint must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). A complaint need not include "detailed factual allegations." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). A complaint must, however, set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to plead a claim. *Iqbal*, 556 U.S. at 678; *see A Soc'y Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011). Additionally, while a court must accept as true all factual allegations contained in the complaint, legal conclusions drawn from those facts are not afforded such deference. *Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012).

**ANALYSIS**

Plaintiff brings an assortment of claims under 42 U.S.C. § 1983 alleging violations of his Fourteenth Amendment due process rights. Under Section 1983, a plaintiff may bring suit against any person who, acting under color of state law, "subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983. To state a claim under Section 1983, a plaintiff must allege that: (1) a right conferred by the Constitution or the laws of the United States was violated; and (2) the putative violation was committed by a person acting under the color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

Through his Amended Complaint, Corbitt brings four claims against the Defendants. (ECF No. 27.) Counts IV, VI, and VII bring 42 U.S.C. § 1983 claims against the Baltimore Police Department pursuant to *Monell v. Department of Social Services*, 436 U.S. 658 (1978). (*Id.* ¶¶ 106–15, 134–50.) Count V asserts a supervisory liability claim against Defendants Davis and Smith under 42 U.S.C. § 1983. (*Id.* ¶¶ 116–33.) The Defendants respond by challenging the sufficiency of the complaint and invoking qualified immunity. (Defs.' Mem.)

## I.  *Monell* Claims Against Baltimore Police Department

In Counts IV, VI, and VII of the Amended Complaint, Plaintiff seeks to impose *Monell* liability on the Baltimore Police Department. (ECF No. 27.) Plaintiff's asserts that BPD's liability under § 1983 arises through three different theories set forth in *Monell*. (*Id.*)

Municipalities are subject to suit under 42 U.S.C. § 1983. *Monell v. Department of Social Services*, 436 U.S. 658, 690 (1978). As Judge Hollander of this Court has aptly summarized, "[t]he Supreme Court determined in *Monell* that local governmental bodies may be liable under

7

§ 1983 for the unconstitutional actions of individual defendants, 'but only where those defendants were executing an official policy or custom of the local government resulting in a violation of the plaintiff's rights.'" *Grim v. Balt. Police Dep't*, No. ELH-18-3864, 2019 WL 5865561, at *17 (D. Md. Nov. 8, 2019) (quoting *Monell*, 436 U.S. at 690–91).[4] This liability is direct, not vicarious; "a municipality is liable only for its own [unconstitutional] acts." *Owens v. Balt. City State's Att'ys Off.*, 767 F.3d 379, 402 (4th Cir. 2014); *see also Connick v. Thompson*, 563 U.S. 51, 60 (2011); *Monell*, 436 U.S. at 691 ("[A] municipality cannot be held liable *solely* because it employs a tortfeasor." (emphasis in original)). The United States Supreme Court has explained that:

> [A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.

*Monell*, 436 U.S. at 694.

To state a claim for *Monell* liability, a plaintiff must allege that (1) "the municipality had an unconstitutional policy or custom; and (2) the unconstitutional policy or custom caused a violation of the plaintiff's constitutional rights." *Johnson v. Balt. Police Dep't*, 500 F. Supp. 3d 454, 459 (D. Md. 2020) (citing *Bd. of Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 403 (1997); *Kirby v. City of Elizabeth City*, 388 F.3d 440, 451 (4th Cir. 2004), *cert. denied*, 547 U.S. 1187 (2006); *Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003)). A policy or custom for which a municipality may be held liable can arise in four ways:

---

[4] "Unlike public officials, municipalities do not enjoy qualified immunity." *Owens v. Balt. City State's Att'ys Off.*, 767 F.3d 379, 402 (4th Cir. 2014) (citing *Owen v. City of Independence*, 445 U.S. 622, 638 (1980)).

(1) through an express policy, such as a written ordinance or regulations; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that 'manifest[s] deliberate indifference to the rights of citizens'; (4) through a practice that is so 'persistent and widespread' as to constitute a 'custom or usage with the force of law.'

*Lytle*, 326 F.3d at 471 (quoting *Cater v. Morris,* 164 F.3d 215, 217 (4th Cir. 1999)). "Although prevailing on the merits of a Monell claim is difficult, simply alleging such a claim is, by definition, easier." *Owens*, 767 F.3d at 403. To survive a motion to dismiss, a plaintiff need only allege facts which, taken as true, "state a claim for relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

Plaintiff alleges the first, third, and fourth theories of *Monell* liability. In Count IV, Corbitt brings a claim under the "express policy" theory, alleging that BPD's Policy 1503 permits the unconstitutional use of force during vehicular pursuits. (Am. Compl. ¶¶ 106–15.) In Count VI, Corbitt brings a "failure to train" claim, alleging that BPD failed to train its officers in vehicular pursuits, resulting in Corbitt's injury and the death of innocent bystanders. (*Id.* ¶¶ 134–42.) In Count VII, Corbitt raises a "condonation" claim, alleging that BPD is liable for condoning an informal pattern or practice of excessive force. (*Id.* ¶¶ 143–50.) Only the condonation theory is viable.

> A.   *Plaintiff Fails to State a Claim Against Baltimore Police Department Under the Express Policy Theory of Monell Liability*

In Count IV of the Amended Complaint Plaintiff Corbitt alleges that BPD is liable under the express policy theory of *Monell* liability. (ECF No. 27 ¶¶ 106–15.) A municipality may violate § 1983 through an express policy that, when enforced, violates a plaintiff's constitutional rights. *See Lytle*, 326 F.3d at 471. Corbitt challenges the Department of Public

Safety and Correctional Services Policy 1503, Emergency Vehicle Operation and Pursuit Policy ("Policy 1503"),[5] as implemented September 13, 2017. Policy 1503 was an amendment to a previous policy on vehicular chases originally known as General Order 11-90. (*Id.* ¶ 38.) According to the Amended Complaint, this amendment was adopted in response to the Department of Justice Civil Rights Division's 2016 report entitled "Investigation of the Baltimore City Police Department" (the "DOJ Report"), which provided guidance to BPD on how to remedy its potentially unconstitutional conduct during the pursuit of fleeing suspect vehicles. (*Id.* ¶¶ 36, 41.) Additionally, Policy 1503 was further amended in November 2019, and this Court has deemed that iteration of the policy constitutional. *See Simmons v. Balt. City Police Dep't*, No. RDB-21-0969, 2021 WL 3418840 (D. Md. Aug. 5, 2021). However, at the time of Plaintiff's alleged injury, the 2017 version of Policy 1503 was in effect. (*Id.* ¶¶ 42, 107.) Accordingly, only the 2017 policy is relevant to this case.

Policy 1503 constrains officers' discretion to engage in vehicular pursuits. The policy authorizes officers to initiate a pursuit when "[t]he pursuit does not unreasonably endanger the safety of others when weighed against the risk the fleeing felon poses if not immediately apprehended but apprehended at a later time," Policy 1503 at 3, and requires officers to terminate a pursuit "when the pursuing member believes that the danger to the member(s) or the public outweighs the necessity for immediate apprehension of the fleeing felon," *id.* at 4. Although the foregoing constraints are mandatory, Policy 1503 instructs officers to consider

---

[5] On a motion to dismiss, a court may take judicial notice of matters of public record. *See Brennan v. Deluxe Corp.*, 361 F. Supp. 3d 494, 501 (4th Cir. 2019) (citing *Phillips v. Pitt Cty. Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009)). General Order 11-90 and both the 2017 and 2019 versions of Policy 1503, discussed *infra*, are public records of which this Court will take judicial notice.

several non-exclusive discretionary factors when making these judgments. As relevant, these

factors include public safety:

> 2. Factors that shall be considered, both individually and collectively, when deciding to initiate or continue a pursuit, include, but are not limited to:
>
>> 2.1 The safety of the public, including: the type of area, such as a school zone; time of day and lighting; weather, road conditions, and density of vehicular and pedestrian traffic; and the speed of the pursuit relative to these factors.
>
> . . .
>
> 3. Factors that shall be considered, both individually and collectively, when deciding to terminate a pursuit, include, but are not limited to:
>
>> 3.6 When the identity of the fleeing felon is known and it does not reasonably appear that the safety needs for immediate capture outweigh the risks associated with continuing the pursuit.

Policy 1503 at 3–5.

Plaintiff challenges two aspects of this policy. First, he contends that Policy 1503 "does

not expressly prohibit the use of excessive force . . . despite its unconstitutional threat to safety

of the public and its contravention of the U.S. Constitution's 14th Amendment." (Am. Compl.

¶ 109.) Second, Plaintiff contends that Policy 1503 provides BPD officers with over broad

discretion to consider several factors when deciding not to pursue an eluding vehicle, and thus

permits officers to neglect to consider any of the factors at all. (*Id.* ¶¶ 109, 111–112.) Both

contentions are unavailing.

As an initial matter, Defendants claim that Plaintiff's facial challenge to the September

13, 2017 version of BPD Policy 1503 is moot because the policy has been amended and is no

longer in effect. (Defs.' Mem. 6–7.) This argument fails. Article III of the Constitution limits

the judicial authority of the federal courts to actual "cases" and "controversies." U.S. Const.

art. III, § 2, cl. 1. "A case becomes moot 'when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome.'" *Deal v. Mercer Cnty. Bd. of Educ.*, 911 F.3d 183, 191 (4th Cir. 2018) (quoting *Simmons v. United Mortg. & Loan Inv., LLC*, 634 F.3d 754, 763 (4th Cir. 2011)). This Court may dismiss a case as moot "only when it is impossible for a court to grant any effectual relief whatever to the prevailing party." *Chafin v. Chafin*, 568 U.S. 165, 172 (2013) (quoting *Knox v. Serv. Employees*, 567 U.S. 298, 307 (2012)). Claims for monetary damages, "if at all plausible, ensure a live controversy." *Mission Product Holdings, Inc. v. Tempnology, LLC*, 139 S. Ct. 1652, 1660 (2019) (citing *Memphis, Light, Gas, & Water Div. v. Craft*, 436 U.S. 1, 8–9 (1978)). Corbitt seeks damages, not an injunction. (Am. Compl. ¶ 30.) Accordingly, Corbitt's controversy is live, as he maintains a cognizable interest in the outcome even though Policy 1053 has been subsequently modified. The issue of mootness is of no moment in this case.

Nevertheless, Plaintiff fails to state a claim under the *express policy* theory. As noted above, Plaintiff alleges that Policy 1503 is unconstitutional because it does not expressly prohibit the use of excessive force during vehicular chases, and thus allows officers to engage in vehicular pursuits without regard for the constitutional rights of civilians. (Am. Compl. ¶ 113.) Additionally, he alleges that Policy 1503 provides officers far too broad discretion over when to pursue a fleeing suspect. (*Id.* ¶¶ 111–12.) Specifically, he alleges that Policy 1503 does not *require* BPD officers to apply the factors enumerated in the Policy to determine whether to engage in a vehicular pursuit, and only instructs them to "consider" those factors in their discretion. (*Id.* ¶ 113.)

This Court rejected an identical argument in *Simmons v. Baltimore City Police Department*, No. RDB-21-0969, 2021 WL 3418840 (D. Md. Aug. 5, 2021). In *Simmons*, this Court addressed a challenge to the 2019 version of Policy 1503. 2021 WL 3418840, at *9. Plaintiffs challenged Policy 1503, alleging that it "authorizes officers to use force that far exceeds what is reasonable, necessary, and proportional to respond to threats," and that it "provides officers with far too broad discretion" because "although it states that there are factors to be 'considered,' there are no defined rules." *Id.* This Court dismissed Simmons' claim, ruling that "[t]he fact that officers are provided discretion with respect to how to weigh the provided factors, does not render the Policy unconstitutional." *Id.* Moreover, this Court highlighted that the November 2019 iteration of Policy 1503 was created through a mandatory collaborative process involving this Court, the DOJ, an Independent Monitor, BPD, and public input. 2021 WL 3418840, at *10. This Court concluded:

> To suggest that Policy 1503, developed as required through the Consent Decree, is unconstitutional places the BPD in an impossible situation. The BPD was mandated to revise its policies in conjunction with the DOJ and the Monitoring Team to ensure that there is 'effective and constitutional policing' in the City of Baltimore.

*Id.* (quoting *United States v. Balt. Police Dep't*, JKB-17-0099, 249 F. Supp. 3d 816, 819 (D. Md. 2017)).

Plaintiff fails to meaningfully distinguish *Simmons*. Although the 2017 iteration of Policy 1503 was amended in 2019, the language relevant to Plaintiff's claim remained unchanged. The detailed factors officers are required to consider when determining when to initiate or terminate a pursuit in the 2019 Policy are identical to those in the 2017 enactment of Policy 1503. Accordingly, the considerations that were decisive in *Simmons* are equally applicable here:

13

Policy 1503, the product of a mandatory Consent Decree, is not unconstitutional for providing officers discretion with respect to how to weigh the factors before engaging in a pursuit of a fleeing suspect. Moreover, the language of the policy permitting officers to use their firearms during high-speed chases was not altered during the revision process and reads the same in both the 2017 and 2019 versions of Policy 1503: Both policies prohibit officers from firing weapons from a moving vehicle except "[t]o counter an imminent threat of death or serious physical injury," or "[t]o counter a situation where the officer or another person is unavoidably in the path of the vehicle and cannot move to safety." Policy 1503 at 6–7. As that language remains unchanged, it is no less constitutional in this case than in *Simmons*. Accordingly, Plaintiff fails to state a claim for relief under the express policy theory of *Monell* liability under § 1983. With respect to Count IV, BPD's Motion to Dismiss (ECF No. 30) is GRANTED, and Count IV is DISMISSED WITH PREJUDICE.

    B. *Plaintiff Fails to State a Claim Against Baltimore Police Department Under the Failure to Train Theory of Monell Liability*

In Count VI of his Amended Complaint, Plaintiff alleges Fourteenth Amendment violations under the failure to train theory of *Monell* liability. "[T]he inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of person with whom the police come into contact." *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). "That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program." *Id.* at 390–91. To state a claim under Section 1983 based on a failure to train, a plaintiff must allege: "(1) the nature of the training"; (2) that the training was a 'deliberate or conscious' choice by the municipality; and

14

(3) that the officer's conduct resulted from said training." *Grim*, 2019 WL 5865561, at *17

(quoting *Lewis v. Simms*, AW-11-CV-2171, 2012 WL 254024, at *3 (D. Md. Jan. 26, 2012)).

Plaintiff Corbitt alleges that "the training afforded to BPD officers concerning high speed vehicular pursuits is inadequate compared to the circumstances they are likely to face in a densely populated city such as Baltimore." (Am. Compl. ¶ 139.) Additionally, Plaintiff claims that BPD's failure to train its officers "was the moving force" behind his injury because "[t]heir actions and/or omissions made it all but certain that Plaintiff or a similarly situated individual would be injured by the actions of BPD Officers." (*Id.* ¶ 142.) To support this claim, Plaintiff references testimony by former BPD officer Timothy E. Beall, who killed a motorcyclist during a high-speed vehicular chase. (*Id.* ¶ 140.) Officer Beall later testified that "there was no substantive training specific to how officers should conduct these pursuits themselves." (*Id.*) He explained that his training simply consisted of driving on a closed course facility, and that "the practice of General Order 11-90 was 'somewhat different from the written version [as] supervisors often instructed officers to pursue vehicles and continue pursuits even in violation of the policy." (*Id.*) However, as this Court noted in *Simmons*, Officer Beall's testimony related only to General Order 11-90—the policy that was in effect prior to the enactment of Policy 1503 pursuant to the Consent Decree. *Simmons*, 2021 WL 3418840, at *11. Accordingly, Officer Beall's testimony remains irrelevant in this case, as he was not trained under the policy at issue.

Unable to rely on Officer Beale's testimony, Plaintiff's *failure to train* theory falls short. Plaintiff offers no additional allegations concerning the "nature of training" or the manner in which "that the officer's conduct resulted from said training." *Lewis*, 2012 WL 254024, at *1;

*see Hall v. Fabrizio*, JKB-12-754, 2012 WL 2905293, at \*2 (D. Md. July 13, 2012) (dismissing failure to train claim against BPD because "the complaint [did] not allege any facts regarding the sort of training that Baltimore police officers actually receive or how that training reflects the decision of any municipal policymaker."). Plaintiff merely states in broad, conclusory terms that the training was inadequate, and alleges summarily that the "failure to train was the moving force behind [his] injury." (Am. Compl. ¶¶ 139, 142.) Absent any reference to a particular BPD training practice or a more specific shortcoming in BPD training program, Plaintiff fails to plausibly claim that BPD's putative training deficiencies caused his injury. Accordingly, Plaintiff fails to state a claim for relief under the failure to train theory of *Monell* liability under § 1983. For these reasons, Defendant's Motion to Dismiss (ECF No. 30) is GRANTED as to Count VI, and Count VI is DISMISSED WITH PREJUDICE.

      C.   *Plaintiff States a Claim Against Baltimore Police Department Under the Condonation Theory of Monell Liability*

In Count VII of his Amended Complaint, Plaintiff plausibly alleges that BPD is liable for Fourteenth Amendment violations under the condonation theory of *Monell* liability. (*Id.* ¶¶ 143–50.) A municipality is liable under a condonation theory if its policymakers "fail 'to put a stop to or correct a widespread pattern of unconstitutional conduct.'" *Owens*, 767 F.3d at 402 (quoting *Spell v. McDaniel*, 824 F.2d 1380, 1390 (4th Cir. 1987)). To state a plausible claim for relief under such a theory, a plaintiff must allege "a 'persistent and widespread practice[] of municipal officers,' the 'duration and frequency' of which indicate that policy makers (1) had actual or constructive knowledge of the conduct, and (2) failed to correct it due to their 'deliberate indifference.'" *Id.* (quoting *Spell*, 824 F.2d at 1386–91). A plaintiff must also sufficiently plead a causal connection between the custom and the constitutional injury they

suffered. *Spell*, 824 F.2d at 1391. Corbitt claims that BPD has engaged in widespread misconduct during vehicular pursuits since 2012, that several prior incidents, lawsuits, and investigations establish that BPD had knowledge of this misconduct and failed to correct it, and that there is a causal connection between this misconduct and his injury. These allegations are collectively sufficient to overcome a motion to dismiss.

First, Plaintiff has plausibly pled the existence of a persistent and widespread practice of engaging in unconstitutional vehicular chases, and BPD's knowledge of this practice. Plaintiff asserts that there is "a culture of acceptance and condonation of unconstitutional officer use of force during emergency chases." (Am. Compl. ¶ 149.) In support, Plaintiff cites six prior lawsuits and describes five specific instances in which BPD engaged in vehicular chases that resulted in death or injury of innocent civilians. (*Id.* ¶¶ 44, 89.) Plaintiff also references the DOJ Report's investigation into BPD police practices as evidence of "a rampant pattern of excessive force." (*Id.* ¶ 144.) At this stage in the litigation, these allegations are sufficient to plead a pattern of widespread unconstitutional conduct—and BPD's knowledge of the same.

Second, Corbitt plausibly pleads BPD's deliberate indifference. To plead deliberate indifference, plaintiff need only allege that the municipality was aware of the alleged pattern or practice and "that the municipality's failure to discipline its officers 'allowed' a custom, policy or practice 'of [constitutional] violations to develop.'" *Jones v. Jordan*, GLR-16-2662, 2017 WL 4122795, at **10 (D. Md. Sept. 18, 2017) (quoting *J.A. v. Miranda*, No. PX-16-3953, 2017 WL 3840026, at *7 (D. Md. Sept. 1, 2017)).  In addition to the lawsuits filed over the past ten years, Plaintiff alleges that the DOJ Report's findings of the use of excessive force during

vehicular pursuits provided officers with notice of the issue. (Am. Compl. ¶ 144.) Additionally, Plaintiff complains that BPD has a custom of "insufficient or non-existent officer discipline," despite the fact that BPD had knowledge of lawsuits against them as a result of "violations of citizens' civil rights during police vehicle pursuits." (*Id.* ¶¶ 146–47, 149.) He further claims that Defendant failed to "take any corrective action in the face of the continuing lawsuits against [the] BPD for civilian injuries and deaths due to officer emergency car chases." (*Id.* ¶ 150.) Accepting these allegations as true, Corbitt has plausibly alleged that BPD has ignored its officers' practice of engaging in excessive force during vehicular pursuits that result in civilian injuries and deaths, thereby approving the practice by condonation.

Defendant counters that Plaintiff's reliance on "a meager history of isolated incidents" is not sufficient to establish a persistent and widespread practice or to satisfy the "deliberate indifference" standard. (Defs.' Mem. 13.) The United States Court of Appeals for the Fourth Circuit has rejected this argument. In *Owens v. Baltimore City State's Attorneys Office*, 767 F.3d 379 (4th Cir. 2014), the plaintiff alleged that the Baltimore City Police Department maintained "a custom, policy, or practice of condoning its officers' conduct in knowingly, consciously, and repeatedly withholding and suppressing exculpatory evidence." 767 F.3d at 402. Owens cited to "[r]eported and unreported cases from the period of time before and during the events complained of," as well as "numerous 'successful motions,'" to support his claim. *Id.* at 403 (alteration in original). Rejecting BPD's argument that these allegations were conclusory, the Fourth Circuit held that these "assertions as to 'reported and unreported cases' and numerous 'successful motions' are factual allegations, the veracity of which could plausibly support a *Monell* claim." *Id.* at 403. The court reasoned that the existence of these prior cases and

successful motions, "if true, would buttress his legal conclusion" regarding BPD's deliberate indifference. *Id.* Accordingly, the Fourth Circuit held that Owens's "brief, but non-conclusory, allegations" were sufficient to survive a motion to dismiss. *Id.* at 403–04.

As the Fourth Circuit made clear in *Owens*, a plaintiff need not allege prior instances in great detail at this early stage. Corbitt likewise relies on prior cases against BPD for fatalities of innocent civilians from vehicular pursuit practices. As in *Owens*, the existence of these cases are factual allegations, which, if true, would bolster Corbitt's *Monell* condonation claim. Although these allegations may be devoid of detail, they provide sufficient factual content to survive a motion to dismiss. *See Garcia v. Montgomery Cty.*, No. JFM-12-3592, 2013 WL 4539394, at *5 (D. Md. Aug. 23, 2013) (quoting *Jordan by Jordan v. Jackson*, 15 F.3d 333, 339–40 (4th Cir. 1994)) ("[A] *Monell* plaintiff need not 'plead the multiple incidents of constitutional violations that may be necessary at later stages to establish the existence of an official policy or custom and causation.'"). Moreover, these claims are supported by his reference to the DOJ Report's findings, which have previously provided a valid predicate for a *Monell* claim against BPD. *See, e.g.*, *Jones*, 2017 WL 4122795, at **9–10 (sustaining condonation claim where plaintiff relied on DOJ Report to allege widespread pattern of stops without reasonable suspicion and arrests without probable cause).

BPD also contends that the DOJ Report cannot serve as the basis for Plaintiff's *Monell* claim because Policy 1503 was not the subject or even in effect when the Report was released. (Defs' Mem. 14.) This argument is inapposite. Under the "condonation" theory, unlike the "express policy" theory, a plaintiff need not reference any specific written policy when making their claim—instead, it is sufficient to plead sufficient facts that demonstrate the existence of

a widespread pattern or practice. *See Spell*, 824 F.2d at 1386–91. Accordingly, as Judge Hollander noted in *Grim v. Balt. Police Dep't*, No. ELH-18-3864, 2019 WL 5865561 (D. Md. Nov. 8, 2019), the relationship between the DOJ report and Policy 1503 is not relevant to the condonation theory of *Monell* liability. *Cf.* 2019 WL 5865561, at *19 (finding that the timing of the DOJ Report was "besides the point," and that the report was evidence that BPD was aware of ongoing constitutional violations). Accordingly, Plaintiff has adequately pled facts to establish the elements of the condonation theory of *Monell* liability under § 1983. With respect to Count VII, BPD's Motion to Dismiss (ECF No. 30) is DENIED.

## II.   Supervisory Liability Claim Against Defendants Davis and Smith

In Count V, Plaintiff asserts a claim of supervisory liability under 42 U.S.C. § 1983 against former BPD Commissioner Kevin Davis and former Police Chief T.J. Smith. (Am. Compl. ¶¶ 116–33.) Defendants argue that the Amended Complaint fails to state a supervisory liability claim because it does not allege sufficient facts to show that the officers were deliberately indifferent. (Defs.' Mem. 15.) Additionally, Defendants claim that to the extent Plaintiff seeks to hold them liable in their individual capacities, he fails to plead sufficient facts to overcome the officers' qualified immunity. (*Id.* at 19.)

"Qualified immunity shields government officials 'who commit constitutional violations but who, in light of clearly established law, could reasonably believe that their actions were lawful.'" *Hunter v. Town of Mocksville*, 789 F.3d 389, 401 (4th Cir. 2015) (quoting *Henry v. Purnell*, 652 F.3d 524, 531 (4th Cir. 2011)). The doctrine "protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Livingston*

*v. Kehagias*, 803 Fed. App'x 673, 678 (4th Cir. 2020) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). Qualified immunity "balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Wilson v. Prince George's Cty.*, 893 F.3d 213, 219 (4th Cir. 2018) (quoting *Pearson*, 555 U.S. at 231); *accord Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) (observing that the doctrine "gives government officials breathing room to make reasonable but mistaken judgments").

"To determine whether an officer is entitled to qualified immunity, the court must examine (1) whether the facts illustrate that the officer violated the plaintiff's constitutional right . . . , and (2) whether the right was clearly established at the time of the alleged event such that 'a reasonable officer would have understood that his conduct violated the asserted right.'" *Humbert v. Mayor & City Council*, 866 F.3d 546, 555 (4th Cir. 2017) (quoting *Miller v. Prince George's Cnty*, 475 F.3d 621, 627 (4th Cir. 2007)). Qualified Immunity may be raised in a Rule 12(b)(6) motion, but "when asserted at this early stage in the proceedings, 'the defense faces a formidable hurdle' and 'is usually not successful.'" *Owens*, 767 F.3d at 396 (quoting *Field Day, LLC v. Cnty. of Suffolk,* 463 F.3d 167, 191–92 (2d Cir. 2006)). "This is so because dismissal under Rule 12(b)(6) is appropriate only if a plaintiff fails to state a claim that is *plausible* on its face." *Id.* (citing *Iqbal*, 556 U.S. at 678) (emphasis in original).

Corbitt alleges that Davis and Smith are liable for failing to address their subordinate officers' alleged unconstitutional conduct during vehicular pursuits. (Am. Compl. ¶¶ 116–33.) Defendants maintain that Corbitt has not stated a plausible claim of supervisory liability.

(Defs.' Mem. 15.) Additionally, Defendants argue that that clearly established law did not render the alleged conduct unconstitutional:

> [They] had no reason to question the binding legal precedent that upholds Policy 1503's firearm provision, [and] it was reasonable for them to limit an officer's use of his or her firearm only to circumstances in which they have probable cause to believe that the suspect poses a threat of serious harm or death to themselves or others.

(*Id.* at 21.) We address each argument in turn.

### A. *Plaintiff States a Claim Against Defendants Davis and Smith for Supervisory Liability*

Plaintiff claims that Davis and Smith are liable for the unconstitutional conduct of their subordinates under a theory of supervisory liability. (Am. Compl. ¶¶ 116–33.) The Fourth Circuit has held that a supervisor may be held liable for the constitutional injuries inflicted by their subordinates in narrow circumstances. *Green v. Beck*, 539 Fed. App'x 78, 80 (4th Cir. 2013) (citing *Love-Lane v. Martin*, 355 F.3d 766, 782–83 (4th Cir. 2004). "A supervisor's continued inaction in the face of documented widespread abuses . . . provides an independent basis" for § 1983 liability against that official by evincing deliberate indifference to "the constitutionally offensive conduct of [their] subordinates." *Slakin v. Porter*, 737 F.2d 368, 373 (4th Cir. 1984). However, public officials "may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior." *Iqbal*, 556 U.S. at 676. "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each government-official defendant, through the official's own individual actions, has violated the constitution." *Id.*

A supervisor may be held liable on a theory "that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care." *Baynard v. Malone*, 268 F.3d 228, 235

(4th Cir. 2001) (quoting *Slakan*, 737 F.2d at 372). To state a claim for supervisory liability under

§ 1983, a plaintiff must allege three elements:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff;
>
> (2) that the supervisor's response to the knowledge was so inadequate as to show 'deliberate indifference to or tacit authorization of the alleged offensive practices,'; and
>
> (3) that there was an 'affirmative causal link' between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (citations omitted). "Establishing a pervasive

and unreasonable risk of harm requires evidence that the conduct is widespread." *Wilkins v.*

*Montgomery*, 751 F.3d 214, 226–27 (4th Cir. 2014) (quoting *Shaw*, 13 F.3d at 799) (alterations

omitted). Additionally, "a plaintiff 'may establish deliberate indifference by demonstrating a

supervisor's continued inaction in the face of documented widespread abuses.'" *Id.* (quoting

*Shaw*, 13 F.3d at 799). As to the third element, "proof of causation may be direct . . . where

the policy commands the injury of which the plaintiff complains . . . or may be supplied by the

tort principle that holds a person liable for the natural consequences of his actions." *Id.*

(quoting *Shaw*, 13 F.3d at 799).

First, Corbitt alleges that Davis and Smith were "responsible for implementing and

enforcing BPD policy regarding the termination or continuation of emergency vehicular

pursuits." (Am. Compl. ¶ 130.) He claims that these Defendants "had actual and constructive

knowledge that officers failed to abide by the discretionary mitigating factors and Policy 1503

and knew that officers had routinely ignored the factors when initiating emergency pursuits."

(*Id.* ¶ 127.) This allegation rests on the same claims as Plaintiff's condonation theory: Plaintiff

cites five prior instances in which innocent bystanders were killed as a result of BPD's practice of engaging in unreasonable vehicular chases. (*Id.* ¶ 121.) He points to six prior lawsuits against BPD for fatalities resulting from BPD's vehicular pursuit practices. (*Id.*) And he alleges that Davis and Smith were "on notice of BPD officers' failure to consider the risks posed to civilians when initiating emergency pursuits by virtue of the findings of the [DOJ Report]." (*Id.* ¶ 122.) At this stage of the litigation, these allegations are sufficient to state a claim that Defendants had knowledge of the alleged unconstitutional conduct.

Second, Corbitt plausibly claims that Davis and Smith's response to this conduct was so inadequate as to constitute deliberate indifference. Plaintiff contends that, despite their knowledge, Defendants "failed to correct the behavior of their subordinate officers," and that those officers were not "disciplined for their failure to consider factors indicating heightened risk to Baltimore citizens." (Am. Compl. ¶ 123.) He also claims that Davis and Smith failed to train their officers on how to properly apply the factors listed in Policy 1503 and thereby "permitted the trainings to include patently reckless conduct." (*Id.* ¶ 124.) Although these allegations are insufficient to state a "failure to train" *Monell* claim, they are sufficient to allege the inaction necessary to establish deliberate indifference. Plaintiff has adequately alleged that, by failing to discipline their officers or correct their conduct during vehicular pursuits, Defendants showed deliberate indifference to the alleged offensive practice.

Third, Plaintiff claims that as a result of the Defendant's failure to act, he suffered a constitutional deprivation. (Am. Compl. ¶ 133.) This element is supported by the nature of Plaintiff's injury: He was shot in the head during a high-speed police chase. (*Id.* ¶¶ 76, 42, 49.) Defendants' alleged failure to control officers' conduct during vehicular pursuits, if true, is

doubtlessly "a causative factor" in this injury. *Baynard*, 268 F.3d at 235. Accordingly, Plaintiff

has sufficiently pled a supervisory liability claim to survive the motion to dismiss stage.

Defendants argue that Corbitt has not alleged facts to show deliberate indifference, as

five of the six examples that Plaintiff cites "occurred before or after Davis's tenure as BPD

Commissioner," and "a single isolated incident alone does not suffice." (Defs.' Mem. 16–17.)

Further, Defendants argue that the prior cases did not occur under Policy 1503. (*Id.* at 17–18.)

These arguments fail. Although the frequency and timing of the conduct needed to establish

a "widespread" practice has not been definitively established, the incidents alleged need not

occur during the Defendants' tenure. *See Lee v. Queen Anne's Cty Office of Sheriff*, RDB-13-672,

2014 WL 476233, at *9 (D. Md. Feb. 5, 2014); *see also Chestnut v. Kincaid*, No. RDB-20-2342,

2021 WL 1662469, at *16 (D. Md. Apr. 28, 2021) (noting that the fact that some of the

examples of BPD officers suppressing exculpatory evidence occurred after the Plaintiffs'

convictions was "besides the point") In *Lee v. Queen Anne's Cty Office of Sheriff*, the plaintiff cited

to three prior instances in which Queen Anne's County police officers violated individuals'

constitutional rights during traffic stops. 2014 WL 476233, at *9. This Court held that each

"specific instance[] of misconduct adequately supplement[ed] [plaintiff's supervisory liability]

claim and demonstrate[ed] the requisite constructive knowledge and deliberate indifference."

*Id.* Moreover, this Court declined "to insist upon specific instances of past misconduct

involving only [the defendant]," as the presence of other incidents were sufficient to establish

"that the defendants were aware of the unconstitutional practice." *Id.* at *9 n.19. Accordingly,

this Court reasoned that one of the prior events raised potential constitutional concerns and

the other two incidents "suggest[ed] that . . . [the defendant] failed to properly supervise and

discipline the deputies because the deputies allegedly remained a part of the Sheriff's Office despite their misconduct." *Id.*

The same logic is applicable here. The prior instances of excessive force used during high-speed vehicular chases are sufficient to support Corbitt's claim of a widespread practice of unconstitutional police conduct. Corbitt relies on more than just a single isolated incident of putative constitutional violations, citing to lawsuits and specific instances of misconduct to provide support for his contention that the alleged misconduct was part of a pervasive pattern. Much like the cases that the plaintiff provided in *Lee*, Corbitt's examples of prior misconduct also suggest that Davis and Smith had knowledge of this ongoing pattern and failed to take action to correct it—regardless of whether all of the instances alleged occurred while Davis and Smith were in office. Accordingly, no less than in *Lee*, these allegations sufficiently support his claim that Davis and Smith had constructive knowledge of the issue and were deliberately indifferent to it.

Defendants assert that *Grim v. Baltimore Police Department* mandates a contrary result. (Defs.' Mem. 16.) In *Grim*, plaintiff alleged three prior instances of strip searches by BPD officers to demonstrate that Commissioner Davis "exhibited continued inaction in the face of documented widespread abuses." 2019 WL 5865561, at *25. This Court held that because "all three incidents occurred before Davis began his tenure as Commissioner," this Court could not "draw an inference of continued inaction on the part of Davis" nor could it find that there was an "alleged affirmative causal link between Davis's alleged inaction and plaintiff's alleged constitutional injury." *Id.* (internal quotation marks omitted). However, unlike in *Grim*, Defendants Davis and Smith concede that at least one of the instances occurred while Davis

was the Commissioner, and that Corbitt's examples occurred before and after Plaintiff's injury. (Defs.' Mem. at 17.) Moreover, the fact that some of these instances occurred before Davis and Smith joined BPD is not fatal to Plaintiff's ability to state a claim. As this Court noted in *Lee*, "the Fourth Circuit has never held that the 'widespread' or 'pervasive' wrongdoing must originate from the same source'" as the plaintiff's alleged injury. 2014 WL 476233 at *9 n.19.

Accepting these well-pleaded facts as true, Plaintiff has plausibly pled that Defendants were aware of a widespread practice of unconstitutional use of force during vehicular pursuits, displayed deliberate indifference due to a failure to correct their subordinate's behavior, and thereby contributed to the alleged constitutional injury. At this stage, Plaintiff has plead sufficient facts to establish a supervisory liability claim under 42 U.S.C. § 1983.

B.   *A Determination of Defendants Qualified Immunity Is Not Appropriate at This Stage*

Defendants nonetheless claim that they are entitled to a defense of qualified immunity because the putative misconduct did not violate clearly established law. (Defs.' Mem. 19). Having found that Corbitt's allegations state a plausible § 1983 claim of supervisory liability, the Defendants' qualified immunity defense turns on whether Plaintiff can show: (1) that it was clearly established at the time of the alleged misconduct that Defendants could be held liable for the acts of their subordinates; (2) that it was clearly established at the time Defendants were supervising Officer-Defendants that the officers' actions were unconstitutional; and (3) that a reasonable person in Defendants' positions would have known that their actions were unlawful. *See Lee*, 2014 WL 476233, at *13 (citing Shaw, 13 F.3d, at 801). In the Fourth Circuit, supervisory liability has been firmly established for quite some time. *Shaw*, 13 F.3d at 801–02. Therefore, Davis and Smith's qualified immunity depends upon the more factual questions

surrounding the second and third inquiry: Corbitt's Fourteenth Amendment claims, and the reasonableness of Davis and Smith's actions during a high-speed chase. At this early stage in litigation, this Court is unable to make any definitive ruling on these fact-specific questions. Accordingly, with respect to Count V, Defendants' Motion to Dismiss (ECF No. 30) is DENIED.

**CONCLUSION**

For the foregoing reasons, Defendants Davis, Smith, and Baltimore City Police Department's Motion to Dismiss (ECF No. 30) is **GRANTED** in part and **DENIED** in part. With respect to Defendant Baltimore City Police Department, Counts IV and VI are dismissed with prejudice. However, with respect to the Count VII *Monell* condonation claim against the Baltimore City Police Department, as well as the Count V supervisory liability claim against Defendants Davis and Smith in their individual capacities, Defendants' Motion to Dismiss (ECF No. 30) is **DENIED**.

A separate order follows.


Dated: March 22, 2022

_____/s/_____

Richard D. Bennett
United States Senior District Judge
